PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2271
_____

UNITED STATES OF AMERICA

v.

WILLIAM S. DAHL,
                    Appellant


_____


On Appeal from the District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cr-00382-001)
District Judge: Honorable Harvey Bartle, III
_____

Argued: June 8, 2016

Before: CHAGARES, KRAUSE, and SCIRICA, <u>Circuit
Judges</u>

(Filed: August 18, 2016)

Brett G. Sweitzer      [ARGUED]
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA  19106
        *Counsel for Appellant*

Bernadette A. McKeon       [ARGUED]
Michelle Rotella
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106
        *Counsel for Appellee*

_____

OPINION

_____


**SCIRICA**, *Circuit Judge*

William Dahl pleaded guilty to multiple offenses involving the use of interstate commerce to engage minors in sexual activities.[1] Because Dahl had several prior Delaware

_____

[1] Dahl was charged with and pleaded guilty to three counts of attempted use of an interstate commerce facility to entice a minor to engage in sexual conduct in violation of 18 U.S.C. § 2422(b); one count of attempted enticement of a minor to travel in interstate commerce to engage in sexual activity, in

convictions related to sexual activity with minors, the District Court sentenced him under the Repeat and Dangerous Sex Offender guideline, United States Sentencing Guideline § 4B1.5, to the top-range sentence of 293 months in prison to be followed by 20 years of supervised release. Dahl argues for the first time on appeal that the District Court's application of U.S.S.G. § 4B1.5 was plain error because his prior state convictions are not categorically "sex offense convictions" under the Guidelines. In light of recent Supreme Court rulings, we agree and will remand for resentencing.

I.

In 2013, Dahl placed several advertisements on Craigslist seeking sexual encounters with young males. Two undercover law-enforcement agents, acting independently, replied to the advertisements, representing themselves as fifteen-year-old boys. Through email communications over the next few weeks, Dahl engaged in graphic sexual conversations, requested photographs of the boys, and attempted to arrange in-person sexual encounters. One of the undercover agents eventually agreed to meet Dahl at his house, ostensibly for a sexual encounter. Dahl was arrested after the detective called off the meeting.

Dahl has several prior Delaware convictions related to sexual activity with minors. Of relevance here, in 1991 he was convicted of first- and third-degree unlawful sexual contact relating to encounters with two seventeen-year-old boys. And in 2001, Dahl was convicted of second-degree

violation of 18 U.S.C. § 2422(a); and one count of transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470.

3

unlawful sexual contact relating to an encounter with a fourteen-year-old boy in 1999.

Based on the application of U.S.S.G. § 2G1.3 (the prohibited sexual conduct guideline) and § 4A1.1 (the criminal history guideline), Dahl's Guidelines range would have been 121–151 months' imprisonment (Total Offense Level 29; Criminal History Category IV[2]), absent any sentencing enhancements. However, the probation officer recommended, and the District Court found, that Dahl's prior state convictions were the equivalent of convictions for federal aggravated sexual abuse under 18 U.S.C. § 2241 (a Chapter 109A offense), and therefore "sex offense conviction" predicates under U.S.S.G. § 4B1.5. Accordingly, Dahl's Total Offense Level was increased from 29 to 34,[3] and

---

[2] Based on Dahl's Presentence Report, the District Court determined Dahl's Total Offense Level of 29 and Criminal History Category of IV as follows:

Base Offense Level: 28
+2 (for enticement through the use of a computer under § 2G1.3(b)(3))
+2 (as a grouping adjustment for multiple counts under § 3D1.4)
-3 (for acceptance of responsibility under § 3E1.1)

Criminal History Category: IV (based on nine criminal history points).

[3] Although § 4B1.5 raised Dahl's offense level to 37, this was reduced by three levels because Dahl accepted responsibility for his conduct.

his Criminal History Category was increased from IV to V, yielding a Guidelines range of 235–293 months' imprisonment. The District Court found the high end of the range was appropriate and sentenced Dahl to 293 months' imprisonment.

Dahl objected to the application of U.S.S.G. § 4B1.5, but on different grounds than he asserts on appeal. The issue of whether Dahl's prior Delaware convictions were improperly categorized as "sex offense convictions" under federal law was therefore unpreserved. We review an unpreserved objection for plain error.[4]

## II.

Dahl contends the District Court committed plain error by failing to apply the categorical approach in determining whether his Delaware first- and third-degree unlawful sexual contact convictions constitute federal sex offense convictions under the federal repeat offender statute, 18 U.S.C. § 2426(b)(1)(B), and therefore subject Dahl to a heightened sentence under the career sexual offender guideline, § 4B1.5. The government responds that we should not apply the categorical approach, but should instead look to the actual

---

[4] We review whether a prior conviction qualifies a defendant for a recidivist sentencing enhancement *de novo*. *United States v. Brown*, 765 F.3d 185, 188 (3d Cir. 2014). When there was no objection below, the challenging party must also meet the requirements of the plain-error standard by demonstrating the error is clear, prejudicial, and affects the fairness or reputation of the judicial proceeding. *United States v. Olano*, 507 U.S. 725, 732 (1993).

conduct of conviction to determine whether it would constitute an offense under the federal statute. Specifically, it contends U.S.S.G. § 4B1.5 and 18 U.S.C. § 2426(b)(1)(B) require a factual approach because they refer to the requisite predicate offense in case-specific terms. Section 2426(b)(1)(B) refers to "a conviction for an offense . . . *consisting of conduct* that would have been an offense" under certain federal statutes, and § 4B1.5 refers to a "sex offense conviction" as "any offense [under 18 U.S.C. § 2426(b)(1)(B)], *if the offense was perpetrated against a minor.*" We disagree with the government. The District Court erred when it failed to apply the categorical approach.

The Supreme Court has explained that to determine whether a defendant's prior federal or state conviction qualifies as a predicate offense, sentencing courts must apply the categorical approach and "'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). If the statute of conviction has the same elements as the federal crime, then the prior conviction can serve as a predicate. "[S]o too if the statute defines the crime more narrowly, because anyone convicted under that law is 'necessarily . . . guilty of all the [generic crime's] elements.'" *Id.* (quoting *Taylor*, 495 U.S. at 599). But if the relevant state or federal statute "sweeps more broadly than the generic crime, a conviction under that law cannot count as a[] . . . predicate, *even if the defendant actually committed the offense in its generic form.*" *Id.* (emphasis added). In other words, we look to the elements of the prior offense "to ascertain the least culpable conduct hypothetically necessary to sustain a

6

conviction under the statute." *Hernandez-Cruz v. Att'y Gen.*, 764 F.3d 281, 285 (3d Cir. 2014). The elements, not the facts, are key. *Descamps*, 133 S. Ct. at 2283.

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court explained that the "categorical approach" applies notwithstanding a predicate statute's reference to conduct. The Court found the Armed Career Criminal Act's (ACCA's) residual clause void for vagueness because application of the categorical approach compelled courts to determine the unconstitutionally vague "ordinary case" of a predicate statute's violation. *Id.* at 2557–58. But the Court upheld the use of the categorical approach generally, and rejected the argument by the government (and Justice Alito in dissent) that the "conduct" language of ACCA should trigger a factual approach. *See id.* at 2561–62 ("[T]he dissent urges us to save the residual clause from vagueness by interpreting it to refer to the risk posed by the particular conduct in which the defendant engaged . . . . In other words, the dissent suggests that we jettison for the residual clause (though not for the enumerated crimes) the categorical approach. . . . We decline the dissent's invitation."). The *Johnson* Court explained that the important textual reference for triggering the categorical approach is "conviction," not "conduct." *Id.* at 2562 ("This emphasis on convictions indicates that 'Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.'" (quoting *Taylor*, 495 U.S. at 600)).

In a recent decision, *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Court emphasized that a sentencing enhancement's use of the phrase "conviction" indicates

7

Congress's intent to apply the categorical approach. 136 S. Ct. at 2252 ("By enhancing the sentence of a defendant who has three 'previous convictions' . . . rather than one who has thrice committed that crime—Congress indicated that the sentencer should ask only about whether 'the defendant had been convicted of crimes falling within certain categories,' and not about what the defendant had actually done." (quoting *Taylor*, 495 U.S. at 600)).[5]

*Johnson* and *Mathis* looked at ACCA, 18 U.S.C. § 924(e)(1)-(2)(B)(ii), whereas here we examine a part of the Code dealing with repeat sex offenders, 18 U.S.C. § 2426(b)(1)(B). But the categorical approach is not unique to ACCA, *Mathis*, 136 S. Ct. at 2251 n.2, and both ACCA and the repeat offender statute use the terms "conduct" and "conviction" in a similar manner.

ACCA's residual clause's description of a predicate conviction is:

> [A] *conviction*[] for . . . any crime . . . that . . . involves

---

[5] The Supreme Court also noted in *Mathis* that allowing a sentencing judge to find facts other than "the simple fact of a prior conviction" would raise "serious Sixth Amendment concerns" because "only a jury, and not a judge, may find facts that increase a maximum penalty." *Mathis*, 136 S. Ct. at 2252 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). And further, "an elements-focus avoids unfairness to defendants" as "[s]tatements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary." *Id.* at 2253 (quoting *Descamps*, 133 S. Ct. at 2288–89).

*conduct* that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e) (emphasis added).

The repeat offender statute's description of a predicate conviction is:

"[A] *conviction* for an offense . . . consisting of *conduct* that would have been an offense under a chapter referred to in paragraph (1) if the *conduct* had occurred within the special maritime and territorial jurisdiction of the United States.

*Id.* § 2426(b)(1)(B) (emphasis added). The government's contention that § 924(e)(2)(B)(ii) is "materially different" from § 2426(b)(1)(B) because it does not refer to "conduct" is misplaced. Furthermore, both statutes refer to "conviction"—the textual trigger for application of the categorical approach. *See Johnson*, 135 S. Ct. at 2562.[6]

The government also contends that a factual inquiry, not a categorical approach, is required because the statute includes the qualifying language, "if the offense was perpetrated against a minor." U.S.S.G. § 4B1.5 cmt. 3(A)(i). But as we held, and the Supreme Court affirmed, in *Nijhawan*

---

[6] Moreover, for the same reasons set forth in *Mathis* regarding the use of the categorical approach under ACCA, applying the categorical approach to § 4B1.5 avoids possible unfairness to defendants that would result from basing an increased penalty on something not legally necessary to a prior conviction. *Mathis*, 136 S. Ct. at 2253.

*v. Attorney General*, 523 F.3d 387 (3d Cir. 2008), *aff'd*, *Nijhawan v. Holder*, 557 U.S. 29 (2009), the factual inquiry triggered by qualifying language is limited to the facts relevant to the qualification itself. The categorical approach continues to apply to the rest of the statute's non-qualifying elements.

The issue in *Nijhawan v. Holder* was whether, and to what extent, the categorical approach should be applied to the loss amount under 8 U.S.C. § 1101(a)(43)(M)(i), which makes an alien removable if he was previously "convicted of . . . an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." *See* 8 U.S.C § 1227(a)(2)(A)(iii). We concluded the loss amount was not an element of the crime, which would require a jury to "actually convict[] [the] defendant of a loss in excess of $10,000" to be subject to removal under §§ 1101(a)(43)(M)(i) and 1227(a)(2)(A)(iii). *Nijhawan*, 523 F.3d at 392. Rather, it was a "qualifier" because it was prefaced with the language "in which"—"'express[ing] such a specificity of fact that it almost begs an adjudicator to examine the facts at issue.'" *Id.* at 393 (quoting *Singh v. Ashcroft*, 383 F.3d 144, 161 (3d Cir. 2004)). A holding to the contrary "would essentially gut every deportability standard containing the 'in which' or other analogous qualifying language." *Id.* at 391. Because it was not an element, we found it proper to depart from the formal categorical approach, and look "'into the facts . . . at issue.'" *Id.* at 393 (quoting *Singh*, 383 F.3d at 161). But we did not abandon the categorical approach in analyzing the rest of the statute. *Id.* at 396 ("[N]either we nor [other circuit courts] have abandoned the . . . [categorical] approach. Indeed, we still resort to it in the initial phase of our analysis because [the underlying statute] instructs us to decide whether

10

the alien has been convicted of a crime involving fraud or deceit.").

The Supreme Court affirmed. It held that the $10,000 threshold is not an element of the crime, but refers to the factual circumstances surrounding commission of the crime. As the Court explained, the "monetary threshold applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." 557 U.S. at 40. But the Court cautioned that the categorical approach should still be applied to the generic elements of the statute. *See, e.g.*, *id.* at 38 ("The . . . 'aggravated felony' statute, unlike ACCA, contains some language that refers to generic crimes and some language that almost certainly refers to the specific circumstances in which a crime was committed. The question before us then is to which category subparagraph (M)(i) belongs."); *id.* at 40 ("We conclude that Congress did not intend subparagraph (M)(i)'s monetary threshold to be applied categorically . . . .").

The government contends, and Dahl does not contest, that the "perpetrated against a minor" provision "is not an element of many of the crimes described in 18 U.S.C. § 2426(b)(1)(A) or (B)." Br. Appellee 15. We agree, but *Nijhawan* dictates that although we delve into the facts to determine whether the victim was a minor, we continue to apply the categorical approach to the underlying elements of the predicate offense.

Our holding in *United States v. Pavulak*, 700 F.3d 651 (3d Cir. 2012), is not to the contrary. *Pavulak* involved the application of 18 U.S.C. § 3559(e), which provides for a

11

mandatory minimum sentence of life imprisonment for defendants who are recidivist child sex offenders. 700 F.3d at 671 (citing 18 U.S.C. § 3559(e)(1)).[7] The statute applies to previous state sex offenses that would be "punishable by more than one year in prison" and involve "conduct that would be a Federal sex offense" if there were federal jurisdiction. *Id.* (quoting § 3559(e)(2)(B)).

The government contends that *Pavulak* allows for a factual inquiry into the underlying facts of this case because, as in *Pavulak*, "the federal sentencing enhancement invites inquiry into the underlying facts of the case," allowing the district judge to "evaluate whether the factual elements of the analogous federal crime were necessarily proven at the time of the defendant's conviction on the state charges." *Id.* at 672

---

[7] Because *Pavulak* was litigated before *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which extended *Apprendi* to mandatory-minimum sentences, the defendant advanced an *Apprendi* claim that § 3559(e)(1) increased his maximum punishment, claiming this punishment would otherwise be only fifty years under 18 U.S.C. § 2251(e). *Pavulak*, 700 F.3d at 673. Instead of disposing of the defendant's claim on the ground that *Apprendi* does not apply to recidivist enhancements, *see Apprendi*, 530 U.S. at 490, we embarked on an extensive analysis of whether the defendant's statutory maximum was increased by § 3559(e)(1), *Pavulak*, 700 F.3d at 673. This inquiry required determining what the statutory maximum would have been under § 2251(e), which depended on whether the defendant had two or more prior convictions "relating to the sexual exploitation of children," in which case § 2251(e) would supply the same life maximum as § 3559(e)(1). *Pavulak*, 700 F.3d. at 673–75.

12

(internal citation and quotations omitted). As an example of a statute requiring a factual inquiry, we noted that 18 U.S.C. § 3559(e) focuses on whether the state offense involves "'*conduct* that would be a Federal sex offense' and thereby invit[es] an inquiry into the facts underlying the defendant's conviction." *Id.* at 673. We described this as applying the "modified categorical approach." *Id.*

Categorizing this inquiry as the "modified categorical approach" was incorrect. We conflated the modified categorical approach with a factual approach that is appropriate only in "special circumstances." Under the modified categorical approach, courts may look to a limited set of judicial documents to determine which of the multiple alternative crimes listed in a statute was the crime of conviction. *See Descamps*, 133 S. Ct. at 2284–85 (offering as examples, the terms of a plea agreement or the transcript of a plea colloquy); *United States v. Brown*, 765 F.3d 185, 189–90 (3d Cir. 2014). But they may not, as *Pavulak* suggests, consider the facts for additional sentencing purposes. *See Descamps*, 133 S. Ct. at 2285 ("The modified approach thus acts not as an exception, but instead as a tool [of the categorical approach]. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's.").

Before *Pavulak* and since, we have applied the categorical approach to Guidelines recidivism provisions when there is no breach of a statutory maximum or *Apprendi* violation. *See, e.g.*, *Brown*, 765 F.3d at 189 n.2; *United States v. Hopkins*, 577 F.3d 507, 510 (3d Cir. 2009). In fact, it has

13

never been the law that, absent an *Apprendi* violation, there are no limits to the scope of permissible fact-finding at sentencing. *See Shepard v. United States*, 544 U.S. 13, 24–26 (2005); *Taylor*, 495 U.S. at 600–02.[8]

Moreover, our language in *Pavulak* conflating the modified-categorical approach with a factual inquiry was dicta that we did not follow even in *Pavulak* itself. Instead, we applied the categorical approach to assess whether the defendant's prior convictions qualified him for the life maximum under § 2251(e), rejecting the "case-by-case analysis" urged by Pavulak that looked at whether the "*conduct* underlying his prior convictions 'involved the [federally prohibited conduct].'" *Pavulak*, 700 F.3d at 674 (quoting *United States v. Randolph*, 364 F.3d 118, 122 (3d Cir. 2004)).

## III.

Applying the categorical approach, we find the District Court erred in its application of U.S.S.G. § 4B1.5 because the Delaware statutes under which Dahl was convicted are broader than the federal aggravated sexual abuse statutes, and

---

[8] The categorical approach was not developed to avoid *Apprendi* violations—the categorical approach predates *Apprendi* by ten years—but to guarantee fairness in recidivist sentencing by avoiding inquiries into the factual circumstances underlying prior convictions. *See Shepard*, 544 U.S. at 24–26 (noting *Apprendi* concerns as a "further reason" for the categorical approach); *Taylor*, 495 U.S. at 600–02. The avoidance of an *Apprendi* violation is just one justification for the approach. *See Mathis*, 136 S. Ct. at 2252.

14

therefore do not qualify as predicate offenses.

Section 4B1.5 of the Sentencing Guidelines enhances the recommended sentence for a "sex crime" when the defendant has at least one prior "sex offense conviction." U.S.S.G. § 4B1.5(a). This Guideline defines "sex offense conviction" as "(I) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor, that (II) does not include trafficking in, receipt of, or possession of, child pornography." *Id.* § 4B1.5, cmt. 3(A)(ii).

Section 2426(b)(1)(A)-(B) in turn, describes a "prior sex offense conviction" as:

> (A) [any offense] under [Title 18 chapter 117], chapter 109A, chapter 110, or section 1591;
>
> or
>
> (B) [any offense] under State law . . . consisting of conduct that would have been an offense under a chapter referred to in paragraph (1) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States.

18 U.S.C. § 2426(b)(1).

The government claims Dahl's 1991 Delaware convictions for first- and third-degree sexual contact are equivalent to a federal conviction for aggravated sexual abuse under 18 U.S.C. § 2241 (a chapter 109A offense). Federal aggravated sexual abuse is defined in pertinent part as follows:

15

(a) **By force or threat.** Whoever . . . knowingly causes another person to engage in a *sexual act*—

>(1) by using force against that other person;

>or

>(2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;

or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

(b) **By other means.** Whoever . . . knowingly—

>(1) renders another person unconscious and thereby engages in a *sexual act* with that other person; or

>(2) administers to another person by force or threat of force, or without knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby—

>>(A) substantially impairs the ability of that other person to appraise or control conduct;

>>and

>>(B) engages in a *sexual act* with that other person;

or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

(c) **With children**. Whoever . . . knowingly engages in a *sexual act* under the circumstances described in subsections (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life.

18 U.S.C. § 2241 (emphasis added).

"Sexual act" is defined under federal law as:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing,

17

of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

*Id.* § 2246(2).

Under the categorical approach, we look to the elements of the state statute as it existed at the time of the prior conviction. *See Taylor*, 495 U.S. at 598 (looking at Missouri's second-degree burglary statutes in effect at the times of petitioner's convictions).

A person in 1989 (the date of Dahl's conduct giving rise to his 1991 convictions) would be guilty of unlawful sexual contact in the first degree in Delaware if:

[I]n the course of committing unlawful sexual contact in the third degree or in the course of committing unlawful sexual contact in the second degree, or during the immediate flight from the crime, or during an attempt to prevent the reporting of the crime, he causes physical injury to the victim or he displays what appears to be a deadly weapon or dangerous instrument.

11 Del. Code Ann. § 769 (1987).

First-degree unlawful sexual contact encompasses second- and third-degree unlawful sexual contact with the aggravating circumstance of physical injury or the display of a deadly or dangerous instrument. *Id.* Therefore, although Dahl was not convicted of second-degree unlawful sexual

18

contact in 1991, we must examine the elements of second-degree unlawful sexual contact. A person in 1989 would be guilty of unlawful sexual contact in the second degree in Delaware if:

> [H]e intentionally has *sexual contact* with another person who is less than 16 years of age or causes the victim to have *sexual contact* with the person or a third person.

11 Del. Code Ann. § 768 (1987) (emphasis added).

A person in 1989 would be guilty of unlawful sexual

contact in the third degree in Delaware if:

> [H]e has sexual contact with another person or causes the victim to have *sexual contact* with him or a third person and he knows that the contact is either offensive to the victim or occurs without the victim's consent.

*Id.* § 767 (emphasis added).

Delaware law defined sexual contact in 1989 as:

> [A]ny intentional touching of the anus, breast, buttocks or genitalia of another person, which touching, under the circumstances as viewed by a reasonable person, is sexual in nature. Sexual contact shall also include touching of those specified areas when covered by clothing.

66 Del. Laws, ch. 269, § 27 (1988) (codified as amended at 11 Del. Code Ann. § 761(f) (1995)).

Comparing the Delaware statutes to the federal statutes, we find that Delaware first- and third-degree unlawful sexual contact are broader than federal aggravated sexual abuse under 18 U.S.C. § 2241 in at least two ways, and therefore, Dahl's prior offenses under these statutes do not qualify as "sex offense convictions" under U.S.S.G. § 4B1.5.

First, and most importantly, each Delaware statute prohibits "sexual contact," whereas § 2241 prohibits "sexual act[s]." *Compare* 66 Del. Laws, ch. 269, § 27, *with* 18 U.S.C. § 2241. Under the versions of Delaware's unlawful sexual contact laws in place in 1989, sexual contact included touching genitalia and other specified areas through clothing. *See* 66 Del. Laws, ch. 269, § 27. But federal law defines "sexual act" more narrowly, requiring penetration or actual skin-to-skin contact between various specified body parts. *See* 18 U.S.C. § 2246(2)(A)-(C). And under federal law, the "intentional touching" of the genitalia of a person under sixteen years old is only a "sexual act" if it is skin-to-skin, i.e., "not through the clothing," and is done with the "intent to abuse, humiliate, harass, degrade, or arouse or gratify a sexual desire of any person." *Id.* § 2246(2)(D).

Federal law defines "sexual contact," but this term is not included within 18 U.S.C. § 2241,[9] nor is it correct to read

---

[9] The term "sexual contact" is used in other sections in Chapter 109A. *See* 18 U.S.C. § 2244 (defining when "sexual contact" is "abusive sexual contact"); *id.* § 2243.

"sexual contact" into the generic use of the term "contact" in the definition of "sexual act." *See United States v. Hayward*, 359 F.3d 631, 641 (3d Cir. 2004) (distinguishing a "sexual act," which requires skin-to-skin touching, from "sexual contact," for which "the touching could occur either directly or through the clothing," and finding the defendant "could only have been sentenced to *sexual contact*, and not *sexual abuse*," the latter of which requires a sexual act).

Even if it were correct to read "sexual contact" into the "contact" language of "sexual act," the scope of the federal definition is narrower than Delaware's definition. The federal definition limits criminal "sexual contact" to touching with the specific "intent to abuse, humiliate, harass, degrade, or arouse or gratify" a sexual desire. *See* 18 U.S.C. § 2246(3). By contrast, Delaware's definition omits this specific intent requirement and criminalizes intentional touching "which touching, under the circumstances as viewed by a *reasonable person*, is sexual in nature." 66 Del. Laws, ch. 269, § 27 (emphasis added). This reasonable person standard is broader than the federal law's intent requirement.[10]

---

[10] *See State v. Row*, 1994 WL 45358, at *7 (Del. Super. Ct. Feb. 1, 1994) (unpublished) ("Under the . . . statute, the contact must be something more than a mere touching . . ., but something less than an attempt to arouse or gratify a sexual desire. Rather, the facts and circumstances surrounding the contact must lead a reasonable person, under the circumstances, to conclude the touching has sexual overtones."); *but cf. Dorcy v. City of Dover Bd. of Elections*, 1994 WL 146012, at *6 (Del. Super. Ct. Mar. 25, 1994) (unpublished) (holding that Delaware's definition of "sexual contact" was similar to Ohio's, which requires a showing that

21

Second, Delaware third-degree unlawful sexual contact in 1989 prohibited consensual contact the defendant nonetheless knew was "offensive to the victim." 11 Del. Code Ann. § 767 (1987).[11] By contrast, federal aggravated sexual abuse involves a nonconsensual sexual act. The defendant must either (1) use force against a person or "threaten[]or plac[e] that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping," 18 U.S.C. § 2241(a), or (2) engage in a nonconsensual sexual act "by other means," including rendering the victim unconscious and then engaging in a sexual act with the victim, or giving the victim a drug or similar substance that "substantially impairs the ability of that person to appraise or control conduct," and then engaging in sex with the victim, *id.* § 2241(b).[12]

---

the defendant had "the purpose of sexually arousing or gratifying either person," such that conduct covered by the Ohio law would be covered by the Delaware law). The language of 11 Del. Code Ann. § 761(f) was the same in 1989 and 1994.

[11] This distinction is only applicable to Delaware third-degree unlawful sexual contact and first-degree unlawful sexual contact when encompassing third-degree unlawful sexual contact with the aggravating circumstances of physical injury or the display of a deadly weapon or dangerous instrument. *See* 11 Del. Code Ann. § 769 (1987).

[12] Also, the compulsion component of first-degree unlawful sexual contact under Delaware law may be broader in scope than the equivalent federal component because under Delaware law, the injury or "display[] [of] what appears to be a deadly weapon or dangerous instrument," can occur at an unspecified time *after* the alleged sexual act occurs. 11 Del.

Therefore, we agree with Dahl that Delaware first- and third-degree unlawful sexual contact "sweep more broadly" than federal aggravated sexual abuse. Dahl's convictions for first- and third-degree unlawful sexual contact cannot be predicate sex offense convictions under U.S.S.G. § 4B1.5.

Neither party contends the modified categorical approach is applicable here. Based on the possible disjunctive reading of Delaware's first- and third-degree unlawful sexual contact statutes, however, such an approach might be appropriate. *See Singh v. Ashcroft*, 383 F.3d 144, 163–64 (3d Cir. 2004).[13] But because any division of the statutes requires

---

Code Ann. § 769 (1987) (a person may be guilty of first-degree unlawful sexual contact if, "during an attempt to prevent the reporting of the crime, he causes physical injury to the victim or he displays what appears to be a deadly weapon or dangerous instrument"). By contrast, the compulsion component of federal aggravated sexual abuse must come *before* engaging in the sexual act. *See* 18 U.S.C. § 2241. But the various compulsion components could be alternative elements, as opposed to alternative means, and therefore, the statute might be divisible. *See, e.g.*, *Mathis*, 136 S. Ct. at 2256–57. In any event, we do not decide this issue here.

[13] In *Singh v. Ashcroft*, we applied the categorical approach to a conviction under Delaware's third-degree unlawful sexual contact statute, 11 Del. Code Ann. § 767 (1995). *Singh*, 383 F.3d at 148, 163–64. Although § 767 was revised in 1995, there are no material differences between this version and the 1987 version in place in 1989 when Dahl engaged in the conduct underlying his 1991 convictions. *Compare* 11 Del. Code Ann. § 767 (1995), *with* 11 Del. Code Ann. § 767

"sexual contact," which under Delaware law is more expansive than the federal "sexual act," *see supra*, either statute would still be broader than § 2241, or any other offense described in 18 U.S.C. § 2426(b)(1)(A).

## IV.

The District Court erred in failing to apply the categorical approach and subsequently applying U.S.S.G. § 4B1.5. But because Dahl did not object to the application of §

---

(1987). In *Singh*, we noted third-degree unlawful sexual contact is phrased in the disjunctive, "both with respect to its *actus reus* (which can be either (1) sexual contact or (2) causing sexual contact) and its *mens rea* (which can be either (a) knowing that the contact is offensive to the victim, or (b) knowing that the contact occurs without the victim's consent)." *Singh*, 383 F.3d at 163. "[A]ny combination of *actus reus* and *mens rea* . . . suffice as the *actus reus* and *mens rea* of 'sexual abuse.'" *Id.* The issue in *Singh*, however, was whether 11 Del. Code Ann. § 767 constituted "sexual abuse of a minor" under the Immigration and Nationality Act, and the Delaware statute "[was] silent on the critical matter of the age of the victim." *Id.* Therefore, although the statute was phrased in the disjunctive, it was "not phrased in the disjunctive in a relevant way" because either reading lacked the age component. *Id.* at 164. Here, as in *Singh*, we need not apply the modified categorical approach because the definition of "sexual contact" implicated in both first- and third-degree unlawful sexual contact is broader than the federal definition of "sexual act" discussed *supra.*

24

4B1.5 on the grounds he asserts here, the issue is unpreserved. We must therefore decide whether it was plain error for the District Court to not apply the categorical approach. Because the error was plain, and errors such as this affect the fairness, integrity, and public reputation of judicial proceedings, we will exercise our discretion and find plain error under Federal Rule of Criminal Procedure 52(b).

Under Rule 52(b), we have the discretion "to correct the forfeited error" if (1) there is an error; (2) the error is plain; and (3) the error affects substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). If these "three prongs are satisfied, the court of appeals has the *discretion* to remedy the error" but our discretion "ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *Olano*, 507 U.S. at 736).

For an error to be "plain," it must be "clear or obvious rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135. The government contends that if there was an error, it was not plain because our ruling in *Pavulak* suggests a judge may look at underlying facts to determine whether earlier conduct would have amounted to a specified federal offense. We recognize that "a new rule of law, set forth by an appellate court, cannot automatically lead that court to consider all contrary determinations by trial courts [as] *plainly* erroneous." *Henderson v. United States*, 133 S. Ct. 1121, 1130 (2013). But *Henderson* clarified that we apply "Rule 52(b)'s words 'plain error' as of the time of appellate review." *Id.* at 1128. Therefore, if the Supreme Court clarifies whether something is an error following sentencing, but before we decide a case on appeal, we must follow the

25

Supreme Court's ruling.

Given the Supreme Court's holdings in *Descamps* and *Nijhawan*, we believe the law was clear at the time of Dahl's sentencing that the categorical approach should have been applied. But even assuming the law was unclear when Dahl was sentenced in May, 2015, the Supreme Court's decision in *Johnson* one month later, and its most recent decision in *Mathis*, clarify that a statute's reference to "conduct" does *not* invite a factual inquiry. Rather, the use of the phrase "conviction" indicates Congress's intent "that the sentencer should ask only about whether 'the defendant had been convicted of crimes falling within certain categories,' and not about what the defendant had actually done." *Mathis*, 136 S. Ct. at 2252 (quoting *Taylor*, 495 U.S. at 600); *see also Johnson*, 135 S. Ct. at 2562. We have no doubt that if Dahl were to be sentenced today, the categorical approach would apply. Therefore, even if the error was not plain at sentencing, it is plain now. *See Johnson v. United States*, 520 U.S. 461, 467 (1997) (concluding that when there is "no doubt that if petitioner's trial occurred today, the failure . . . would be an error," this error is "plain"); *cf. United States v. Stinson*, 734 F.3d 180, 187 (3d Cir. 2013) (finding the error was clear in light of the plain language of the relevant Guidelines provision, despite the issue being one of first impression).

We also hold, and the government does not contest, that this error affected substantial rights. Generally, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734. But "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable

26

probability of a different outcome absent the error." *Molina-Martinez*, 136 S. Ct. 1338, 1345 (2016); *see also United States v. Knight*, 266 F.3d 203, 207 (3d Cir. 2001) ("[A]n error in application of the Guidelines that results in [the] use of a higher sentencing range should be presumed to affect the defendant's substantial rights."). The government can rebut this presumption if it can show "that the judge based the sentence he or she selected on factors independent of the Guidelines." *Molina-Martinez*, 136 S. Ct. at 1347.

Here, the sentencing judge referenced the initial guideline range, stating "I find no basis to vary downward from the advisory sentencing guidelines." J.A. 101. Therefore, we cannot conclude, as would be required to affirm, "that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." *Molina-Martinez*, 136 S. Ct. at 1346. Nor can we conclude "that the sentencing court would have imposed the same sentence regardless of the [sex] offender designation" because "[t]o assume so—particularly when the record suggests that [the offender designation] played a role in the ultimate sentence imposed—would 'place us in the zone of speculation and conjecture.'" *United States v. Calabretta*, No. 14-3969, 2016 WL 3997215, at *9 (3d Cir. Jul. 26, 2016) (quoting *United States v. Zabielski*, 711 F.3d 381, 387 (3d Cir. 2013)). But we also cannot conclude that, had the judge known § 4B1.5 did not apply, he would not have nevertheless considered an upward departure—an integral feature of the Sentencing Guidelines. *See Koon v. United States*, 518 U.S. 81, 93–95 (1996).

Finally, we must determine whether the error "seriously affects the fairness, integrity or public reputation of

27

judicial proceedings.'" *Puckett*, 556 U.S. at 135 (quoting *Olano*, 507 U.S. at 736). We generally exercise our discretion to recognize a plain error in the misapplication of the Sentencing Guidelines. *Knight*, 266 F.3d at 206 n.7. This is because, as noted by a sister court of appeals, "few things . . . affect . . . the public's perception of the fairness and integrity of the judicial process more than a reasonable probability an individual will linger longer in prison than the law demands only because of an obvious judicial mistake." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1335 (10th Cir. 2014). We will likewise exercise our discretion here.

The government contends there was no miscarriage of justice because the undisputed facts make clear the defendant engaged in conduct amounting to federal sex offenses. Again, however, when determining whether a predicate offense qualifies under the Guidelines, sentencing courts should not look to the underlying facts of the prior offense, but to its elements. *Descamps*, 133 S. Ct. at 2283.[14]

---

[14] The government also contends Dahl's 2001 conviction for second-degree unlawful sexual contact under 11 Del. Code Ann. § 768—resulting from conduct in 1999—qualified as a prior offense for the purposes of § 4B1.5 because it is analogous to 18 U.S.C. § 2243(a)(3). Section 2244(a)(3) criminalizes "knowingly engag[ing] in or caus[ing] *sexual contact* with or by another person, if so to do would violate . . . subsection (a) of section 2243 . . . had the *sexual contact* been a sexual act . . . ." 18 U.S.C. § 2244(a) (emphasis added). The government's argument is not persuasive. First, it is not clear the government could have used this offense to increase Dahl's sentence. The government noted during Dahl's plea colloquy that "[s]ection 2243 [was] *not the*

## V.

We recognize the severity of Dahl's offense, but the error here is plain under *Johnson* and *Mathis*, and affects Dahl's substantial rights under *Molina-Martinez*. Therefore, we will vacate Dahl's sentence and remand for resentencing in accordance with this opinion and in consideration of 18 U.S.C. § 3553(a) and the Sentencing Guidelines.

---

*Federal equivalent crime* [it was] relying upon for [Dahl's] prior sex offense." J.A. 57 (emphasis added). Second, the definition of "sexual contact" in Delaware in 1999 (which is incorporated in Delaware's definition of second-degree unlawful sexual contact, *see supra*) was materially the same as the definition of "sexual contact" in Delaware in 1989. *Compare* 11 Del. Code Ann. § 768 (1995) and 72 Del. Laws, ch. 109 § 1 (effective July 1, 1999) (codified as amended at 11 Del. Code Ann. § 761(f) (2000)), *with* 66 Del. Laws, ch. 269, § 27 (1988). Therefore, the Delaware definition of "sexual contact" in 1999, and by extension the Delaware definition of second-degree unlawful sexual contact, was broader than 18 U.S.C § 2243(a)(3). *See supra* n. 10 and accompanying text.