**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4238
_____

UNITED STATES OF AMERICA

v.

WILLIAM S. DAHL,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-14-cr-00382-001)
District Judge:  Honorable Harvey Bartle, III

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2017

Before:  VANASKIE, RENDELL, and FUENTES, Circuit Judges

(Opinion filed: October 26, 2017)
_____

OPINION[*]
_____

FUENTES, Circuit Judge.

In a previous appeal in this case, we ruled that defendant-appellant William Dahl

had been improperly designated as a recidivist sexual offender under U.S.S.G. § 4B1.5—

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

which nearly doubled his sentencing exposure—and vacated his top-of-the-Guidelines-range sentence of 293 months in prison. On remand, the District Court recalculated the Guidelines range without the § 4B1.5 enhancement, but then—at the government's urging—varied upwards to reimpose the same 293-month prison sentence. Dahl now appeals the judgment of sentence for a second time, arguing both that it violates his constitutional right to due process and that the District Court committed procedural error at resentencing. We will affirm.

## I.

We write against the backdrop of our prior precedential opinion, *United States v. Dahl*, 833 F.3d 345 (3d Cir. 2016). As such, we assume the reader's familiarity with the facts and recite only what is germane to today's disposition.

In 2013, two 15-year-old boys responded to William Dahl's Craigslist advertisements, in which Dahl, then on probation, had sought sexual encounters with "young" men. Although the advertisements themselves left the lower boundaries of "young" ambiguous, Dahl expressed interest in the two underage boys, sending (and requesting) explicit pictures, engaging in sexually charged dialogue, and attempting to arrange a meeting. After the "boys" turned out to be undercover detectives, Dahl was charged in the Eastern District of Pennsylvania with offenses involving the use of interstate commerce to engage minors in sexual activities.

Some months after indictment, Dahl and the government entered into a Fed. R. Crim. P. 11(c)(1)(C) plea agreement containing a binding recommendation of 205

months in prison. On the eve of trial, the parties convened for a change-of-plea hearing. However, the District Court advised counsel that it would not accept the plea agreement, and impose the 205-month term, without knowing more about Dahl, his background, and his criminal history, and without the benefit of allocution and witness testimony. Dahl then decided to enter an open plea without the benefit of a plea agreement.

Information about Dahl's background came to the District Court by way of the pre-sentence report (PSR) prepared by the Probation Office, which laid out Dahl's lengthy adult criminal history. Because of Dahl's "multiple prior sex offenses,"[1] the PSR applied the § 4B1.5 recidivism enhancement, amounting to a five-point increase in offense level and a single-level upward criminal history adjustment. Dahl's Guidelines range was calculated at 235–293 months, whereas without the § 4B1.5 enhancement he would face 121–151 months—a significant difference.

At sentencing, the government argued in favor of a prison term of 293 months—the top of the enhanced Guidelines range—while the defense asked the Court to vary below the Guidelines range to the rejected plea agreement's term of 205 months. The District Court ultimately sided with the government. Referencing the "reprehensible" nature of Dahl's current offenses, his lengthy criminal history, and the need to protect the public, the District Court declined to vary and sentenced Dahl to 293 months in prison.[2]

On appeal, and reviewing for plain error, we vacated Dahl's sentence and

---

[1] PSR ¶ 37.
[2] *See* JA 101–04.

remanded for resentencing. A 1991 Delaware conviction, we held, could not be a predicate offense for the § 4B1.5 enhancement under the "categorical approach"—the rule establishing that the required elements of a prior conviction, rather than the underlying facts, determine whether it qualifies as a predicate offense—because the Delaware statutes in question swept more broadly than the comparative federal offense.[3] The sentencing transcript, meanwhile, did not allow the conclusion that the District Court would have imposed the same sentence irrespective of the Guidelines mistake, although that outcome also was not foreclosed.[4] Remand was therefore warranted.

Back before the District Court, the parties submitted revised sentencing memoranda. The government now acknowledged that Dahl's actual Guidelines exposure was 121–151 months. But it nevertheless urged the District Court to depart or vary upwards to a sentence within the now-inapplicable, enhanced Guidelines range, arguing that an unenhanced sentence "underrepresents [Dahl's] criminal history" and "in no way accounts for [Dahl's] undeterred sexual crimes against children."[5] The defense accused the government of "trying to sidestep [this Court's] remand for a new sentencing,"[6] formally objected to the government's request for an upward departure or variance, and argued that a sentence within the revised range of 121–151 months would be appropriate—the latter due in part to Dahl's age and declining health.

---

[3] *See United States v. Dahl*, 833 F.3d 345, 353–57 (3d Cir. 2016).
[4] *See Dahl*, 833 F.3d at 358–59.
[5] JA 143.
[6] JA 116, 125.

4

The parties made their presentations during a November 2016 resentencing hearing. As before, the government emphasized the seriousness of Dahl's offense and his lengthy criminal history. The defense, in addition to echoing the points made in the sentencing memorandum, argued that it would be unfair and prejudicial, and possibly raise due process concerns, for the District Court to consider the facts of Dahl's older offenses, in light of counsel's inability to meaningfully contest them. Instead, the District Court should "start at [the Guidelines range of] 121 to 151 [months] and then look at appropriate factors that may warrant a sentence . . . slightly outside that Guideline range."[7] Elsewhere, however, the defense appeared to stipulate to the facts of Dahl's prior offenses, while conceding that the District Court "can consider almost anything when imposing a sentence" including "[the not-contested] facts about priors in the PSR."[8]

Having heard the attorneys' arguments and elicited a statement from Dahl, the District Court imposed its sentence. First, the Court calculated the correct Guidelines range: 121–151 months. The Court then turned to the § 3553(a) factors. With regard to Dahl's current and prior convictions, the Court described Dahl's current offenses as "some of the most serious . . . in the criminal code" and referred to his "most serious criminal history" that "spanned over three decades."[9] The Court also acknowledged Dahl's extensive history of therapy, treatment, and alternatives to incarceration, "none of

---

[7] JA 127.
[8] JA 116, 125.
[9] JA 134.

5

[which] ha[s] seemed to do any good."[10]  In light of these factors, considered in tandem with Dahl's "recidivist" tendencies and the need to "act to protect society and particularly young boys from further crimes," the Court granted the government's request for an upward variance. In the end, Dahl was resentenced to 293 months in prison—or precisely the same custodial sentence originally imposed.[11]  Dahl lodged no objection during or after the District Court's explanation of its decision.

II.[12]

a) <u>Due Process Challenge</u>

Dahl argues that the District Court's reimposed custodial sentence—at the high end of the now-inapplicable enhanced recidivist range—denied him the benefit of our earlier decision, perpetuated the error corrected on appeal, and violated his right to due process.  Our review of this constitutional challenge is plenary.[13]

Sentencing under the advisory Guidelines follows a three step process: 1) the calculation of the correct advisory Guidelines range, incorporating any relevant sentencing enhancements; 2) formal consideration and rulings on any motions for departure; and 3) consideration of the Guidelines range together with the § 3553(a) statutory factors in order to determine, and impose, the appropriate sentence, which may

---

[10] JA 134.

[11] JA 135.

[12] We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

[13] *See United States v. Bass*, 54 F.3d 125, 132 (3d Cir. 1995).

vary upward or downward from the advisory Guidelines range.[14]  Step 1, calculating the correct Guidelines range, proceeds exactly as it would have under the mandatory, pre-*Booker* Guidelines[15]—extending to the use of the formal, elements-based "categorical approach" to determine the application of certain enhancements based on prior convictions.[16]  Because Guidelines errors carry over to the subsequent steps of sentencing, and affect the District Court's perception of what is and is not a reasonable sentence, the law recognizes a presumption in favor of remanding for correction or clarification those sentences that are based on erroneous Guidelines ranges.[17]

Our previous opinion in this case corrected a plain error at step 1: the calculation of the Guidelines range, which was erroneously enhanced by convictions that did not qualify as predicates under the categorical approach.  We did not go beyond that first step, as we were not called upon to do so; we did not opine on what might or might not be an appropriate sentence, or whether 293 months in prison was substantively reasonable.

---

[14] *See United States v. Fumo*, 655 F.3d 288, 308 (3d Cir. 2011).  The government's request for a Guidelines "departure" does not appear to have been explicitly ruled upon; presumably, the District Court thought it was subsumed under the alternative request for a variance.  Regardless, Dahl does not appeal any error at step 2.
[15] *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).
[16] *See, e.g.*, *United States v. Chapman*, No. 16-1810, ___ F.3d ___, 2017 WL 3319287, at *4 (3d Cir. Aug. 4, 2017) (career-offender Guideline).
[17] *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1349 (2016); *United States v. Knight*, 266 F.3d 203, 208 (3d Cir. 2001).

On resentencing, and in line with our mandate,[18] the District Court correctly recalculated Dahl's Guidelines range at step 1. But then, at step 3, it considered the § 3553(a) factors, and particularly Dahl's criminal history and the danger he posed to the public, in imposing sentence.

The difference between steps is crucial. While the categorical approach is required by the mechanical Guidelines calculation found at step 1, we have never held that the categorical approach's constraints apply to step 3—or, by extension, that the facts deemed improper at step 1 may not be considered at step 3. As Dahl recognizes, the Eleventh Circuit has upheld a sentencing court's discretion to reimpose, on remand, a sentence earlier vacated by the Court of Appeals due to a categorical approach error, and he points to no authority to the contrary.[19]

Dahl nevertheless argues that his due process rights were violated because the underlying error of the first sentencing proceeding—the incorrect, enhanced Guidelines range—was not truly eliminated from the case. With the elimination of the enhancement,

---

[18] Dahl argues that he was denied the "benefit of this Court's mandate" when the District Court imposed the same sentence on remand. Dahl Br. at 19; *see also United States v. Kennedy*, 682 F.3d 244, 252–53 (3d Cir. 2012) (explaining the "mandate rule"). Our mandate directed the District Court to recalculate Dahl's Guidelines range and then conduct resentencing. Dahl received the benefit of that directive; his Guidelines range no longer included the enhancement, and his above-Guidelines sentence no longer carried the same default appearance of reasonableness. "Nothing in our mandate altered the [D]istrict [C]ourt's duty to make an individualized assessment [of Dahl] based on the facts presented." *United States v. Alston*, 722 F.3d 603, 607 (4th Cir. 2013) (internal quotation marks and citation omitted).

[19] *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1256–61 (11th Cir. 2015).

Dahl argues, the old, erroneous 235–293 range was "now random"[20] from the perspective of the correct Guidelines range. Using it as the guidepost at resentencing, which Dahl claims the District Court did, simply "perpetuated the original Guidelines error" and violated Dahl's right to due process.[21]

But this argument mischaracterizes the District Court's consideration of the factors in step 3. The record reflects that the District Court considered all relevant § 3553(a) factors when deciding the sentence. The judge considered the "seriousness of the offenses," the "need to protect the public," and noted how in Dahl's case, non-custodial measures such as therapy and treatment, home confinement, and probation had all proved fruitless in preventing him from re-offending.[22]

Even if the District Court had explicitly referred to the erroneous Guidelines range in resentencing, Dahl's argument rests on the faulty assumption that an inapplicable Guidelines range cannot guide the District Court in its discharge of its sentencing responsibilities. In fashioning an appropriate sentence, the District Court may reasonably look to Guidelines more broadly as providing guidance and alternatives.[23] Sometimes

---

[20] Dahl Br. at 16.

[21] Dahl Br. at 16.

[22] Indeed, Judge Bartle stated at resentencing: "In a word, Mr. Dahl, you are a pedophile and a recidivist. The Court, above all, is compelled to act to protect society and particularly young boys from further crimes of you, the defendant. The Court has no doubt that without a long sentence and significant upward variance, you would be back on the street as a sexual predator. The Court cannot afford to take a chance on your behaving yourself back in society."

[23] Dahl cites *Molina-Martinez* to the contrary, but that case dealt with the kind of error we encountered in his previous appeal: the District Court's *mistaken* calculation of, and

this can inure to a defendant's benefit—if, for instance, a court thinks that a recidivism enhancement overstates a defendant's culpability and then refers to the unenhanced range—and sometimes to his or her detriment. But Dahl has cited nothing suggesting that the mere presentation of an alternative calculation, even if that calculation ends up being technically erroneous, puts its consideration beyond the reach of the District Court's holistic sentencing assessment. Notwithstanding that in the first instance, a 293-month sentence based on the inapplicable enhancement was not justified, it was nonetheless justified at resentencing based on other considerations.

Thus, without forestalling the possibility that the consideration of erroneous Guidelines ranges might warrant remand in certain circumstances, we detect no such mistake here. The range considered by the District Court was the range that would have applied had Dahl been deemed a recidivist under the Guidelines. The categorical approach at step 1 notwithstanding, the District Court did not err in considering at step 3 the facts of Dahl's criminal history and granting the government's motion to vary back within the recidivist range based on those facts and the other § 3553(a) considerations.

b) Other Procedural Sentencing Errors

---

reliance on, an incorrect Guidelines range at step 1. *See Molina-Martinez*, 136 S. Ct. at 1346. *Molina-Martinez* does not hold that a District Court's decision to reference or be guided by an inapplicable Guidelines range on step 3 is a procedural error. Further, it is not necessary for a trial court to "err" for more than one potential Guidelines range to be in place at sentencing, as Guidelines calculations are often disputed. For instance, had Dahl objected initially to the use of his prior offenses at predicates, and had the District Court agreed, the Court would nevertheless be aware of the possible recidivism enhancement even as it declined to apply it at Step 1.

Dahl argues that the District Court committed two step-3 errors. First, it failed to meaningfully consider the applicable (i.e., unenhanced) Guidelines range. Second, it failed to justify its variance without responding to the arguments made by the defense in mitigation.

Dahl concedes that this second point draws plain error review, but he contends that the meaningful-consideration argument was preserved through his underlying argument that "imposing 293 months would require ignoring the 121–151 month range altogether."[24] Having reviewed the record, we disagree. Dahl's opening brief makes clear that the complained-of error derives from the District Court's alleged failure to adequately explain, and thus make clear on the record, its consideration of the unenhanced Guidelines range, and show its "cognizance" of that range throughout step 3. A timely objection at sentencing or after the pronouncement of sentence could have cured this alleged error by eliciting additional explanation from the District Court, but Dahl lodged no objection. Accordingly, both alleged errors draw plain error review.[25]

While recognizing the sheer magnitude of the District Court's upward variance, no plain error is apparent on the points Dahl identifies. The District Court thought that the applicable Guidelines range understated Dahl's criminal history, likelihood of (and prior)

---

[24] Reply Br. at 7.

[25] *See United States v. Flores-Mejia*, 759 F.3d 253, 255 & n.1 (3d Cir. 2014) (en banc); *see also id.* at 258 ("An objection at sentencing, even if sometimes time-consuming, serves the important purpose of reminding the judge of these requirements and allowing the judge to immediately remedy omissions or clarify and supplement inadequate explanations.").

recidivism, and continued danger to the community. The District Court summarily dismissed Dahl's reliance on the mitigating circumstances of age and infirmity, which (in tandem with other aspects of Dahl's background) had been discussed at length earlier in the hearing. Reading the transcript, we come away understanding what the District Court intended to do and why it did so. We cannot say that the lack of a more fulsome explanation or discussion of the relevant sentencing factors amounted to an error that was clear, prejudicial, and affected the fairness of the judicial proceeding.[26]

## III.

Dahl's sentence is undeniably harsh, but as explained above, the District Court did not err in choosing and imposing it. The judgment of sentence will thus be affirmed.

---

[26] *Dahl*, 833 F.3d at 349 n.4 (articulating plain error standard). Dahl's reliance on *Gall v. United States*, 552 U.S. 38 (2007), and *United States v. Negroni*, 638 F.3d 434 (3d Cir. 2011), is unavailing, as neither of those cases arose on plain error review. *See Gall*, 552 U.S. at 56; *Negroni*, 638 F.3d at 445.