**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2802
_____

UNITED STATES OF AMERICA,

v.

JUSTYN PEREZ-COLON,
Appellant
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00108-001)
District Judge: Honorable Gene E.K. Pratter
_____

Argued on October 4, 2022

Before: HARDIMAN, SHWARTZ, and NYGAARD, *Circuit Judges*.

(Filed: March 22, 2023)

Keith M. Donoghue [Argued]
Brett G. Sweitzer
Leigh M. Skipper

Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

      *Counsel for Appellant*

Jennifer Arbittier Williams
Robert A. Zauzmer [Argued]
Priya Desouza
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

      *Counsel for Appellee*

––––––––––––

OPINION OF THE COURT

––––––––––––

HARDIMAN, *Circuit Judge*.

Justyn Perez-Colon appeals his conviction and judgment of sentence after pleading guilty to nine child-pornography crimes. He raises three challenges to the calculation of his total offense level under the United States Sentencing Guidelines and takes issue with his conviction on Count Eight. Though some of Perez-Colon's arguments have merit, none warrants reversal. We will affirm.

I

A

Perez-Colon's child pornography offenses included: two counts of production in violation of 18 U.S.C. § 2251(a) (Counts One and Two); one count of distribution in violation of 18 U.S.C. § 2252(a)(2) (Count Three); five counts of attempted distribution in violation of 18 U.S.C. § 2252(a)(2) (Counts Four through Eight); and one count of possession in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Nine).[1] Almost all of Perez-Colon's criminal conduct involved "Minor 1," a female toddler; only Count Eight involved "Minor 2," a male toddler.

At the time of his crimes, Perez-Colon was living with Minor 1 and her mother at a motel. He posted a Craigslist advertisement seeking to "share real incest stories fetish stories underage pedo stories" and stated, "I have real experiences and

---

[1] The Judgment misidentifies Count Two as for *distribution* rather than *production*. The District Court's oral pronouncements identifying Count Two as a § 2251(a) production conviction control. *See United States v. Chasmer*, 952 F.2d 50, 52 (3d Cir. 1991) (recognizing the "firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict" (citation omitted)). The District Court may correct the apparent clerical error under Rule 36 of the Federal Rules of Criminal Procedure.

pictures." App. 50.[2] An undercover FBI agent responded to Perez-Colon's post and the two conversed on a messaging app. Perez-Colon eventually sent pornographic images and videos of Minor 1 to the agent. Those included: a picture of her in pajamas with an adult penis in the foreground; a video of a male masturbating near her face while she slept; and a picture of her genitals, made visible by pulling back her diaper. A search of Perez-Colon's smartphone revealed that he produced these and other similar pictures and videos at two points, three days apart.

With respect to Count 8, Perez-Colon also attempted to distribute an image of Minor 2's genitals. Minor 2's mother took the photo and sent it to Perez-Colon to show him the boy's rash and Perez-Colon later attempted to distribute it to others for malicious reasons.

B

The Presentence Investigation Report (PSR) calculated Perez-Colon's base offense level under the Sentencing Guidelines as 32. The PSR recommended enhancements, including for the age of Minor 1, the use of a computer or interactive device, Perez-Colon's care or supervisory control over Minor 1, and Perez-Colon's pattern of prohibited sexual conduct. Because his offenses fell into two different groups under the Guidelines, the PSR added two points. It then deducted three points for acceptance of responsibility.

---

[2] For clarity, we cite Joint Appendices Volumes I, II, and III as "App." and Joint Appendix Volume IV, which contains pagination that conflicts with Volume III, as "Supp. App."

Although the PSR calculated Perez-Colon's total offense level as 50, the Guidelines maximum offense level is 43, which brings with it a recommended sentence of life imprisonment regardless of criminal history category. *See* U.S.S.G. Ch. 5, Pt. A & cmt. n.2. Perez-Colon's statutory maximum sentence did not allow for a life sentence. He faced up to 30 years' imprisonment for Counts One and Two, 18 U.S.C. § 2251(e), and up to 20 years for Counts Three through Nine, 18 U.S.C. § 2252(b). Those statutory maximums, running consecutively, yielded a Guidelines range of 200 years' imprisonment. *See* U.S.S.G. § 5G1.2(b).

Perez-Colon unsuccessfully objected to parts of the PSR. First, he objected to the PSR's treatment of Guideline § 3D1.2, which required the District Court to group closely related counts together when determining Perez-Colon's number of "units" of counts. The PSR grouped Perez-Colon's nine counts of conviction into two groups, separating the two production counts, based on conduct that took place three days apart. Perez-Colon claimed the production counts involved "the same minor [and] the same harm," Supp. App. 287, and thus should have been grouped together in a single unit under § 3D1.2(b). That would have reduced Perez-Colon's offense level two points. *See* U.S.S.G. § 3D1.4.

Perez-Colon also contested the enhancement in § 2G2.1(b)(5), which imposes a two-level increase "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." The PSR applied this enhancement because Perez-Colon was "monitoring . . . Minor 1 in the absence of her mother," while they were living at the motel. Supp. App. 249. Perez-Colon contended that the enhancement was inapplicable because he

5

committed the crimes while "Minor 1 was asleep in bed" and the mother was showering "in the same motel room nearby." Supp. App. 185.

He also objected to the enhancement under § 4B1.5(b), which prescribes a five-level increase for "a pattern of activity involving prohibited sexual conduct." The PSR applied this enhancement because Perez-Colon was previously adjudicated delinquent for sexual assault and indecent assault of a minor.[3] Perez-Colon contended the categorical approach precluded this enhancement because the state statutes he violated were broader than their federal counterparts.

After rejecting these three arguments, granting Perez-Colon's objection to a two-level enhancement for use of a computer, and denying the Government's request for a vulnerable-victim enhancement, the District Court fixed Perez-Colon's total offense level at 48 and his Guidelines range at 200 years' imprisonment. The Court imposed a 55-year sentence: 20 years for each of the two production counts, to be served consecutively, and 15 years for each of the remaining seven counts, to be served concurrently to one another but consecutively to the production sentences.

Perez-Colon filed this timely appeal. He challenges his sentence, claiming the District Court erred when it grouped his counts of conviction into two units and applied enhancements under §§ 2G2.1(b)(5) and 4B1.5(b). He also asks us to vacate his judgment of conviction on Count Eight for attempted

---

[3] In Pennsylvania, a juvenile is "adjudicated delinquent" when found to have engaged in conduct that would be a crime if committed by an adult. 42 Pa. Cons. Stat. §§ 6302, 6354.

distribution of child pornography. We address each argument in turn.[4]

II

Perez-Colon claims the District Court erred when it placed his counts of conviction into two groups, which increased his offense level two points under Guideline § 3D1.4. He argues that the Court should have grouped the two production counts together under § 3D1.2(b) because they involved substantially the same harm. Doing so would have resulted in no offense-level increase under § 3D1.4.

The parties dispute the standard of review that applies to this issue. The Government argues for clear error review; Perez-Colon requests plenary review. We need not resolve the dispute because the District Court did not err under either standard.

The Guidelines require grouping of counts that involve "substantially the same harm." U.S.S.G. § 3D1.2. Counts can involve substantially the same harm in four ways, only one of which is relevant here: "When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). Perez-Colon's two production counts involved two acts and the same victim, so whether they should be grouped turns on whether the two instances of using Minor 1 to produce pornographic images and videos, three

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We review the sentence under 18 U.S.C. § 3742(a) and the conviction under 28 U.S.C. § 1291.

days apart, were connected by a common objective or constituted a common scheme or plan.

We agree with the District Court's determination that the two acts against Minor 1 were not so connected. When a child endures sexual abuse (including being used to produce child pornography) on separate occasions, the crimes do not involve "substantially the same harm." *See* U.S.S.G. § 3D1.2(b). The Guideline speaks of the same harm, not the same *type* of harm. Each occasion of abuse inflicts fresh harm on the child—new fear and trauma—distinct from the prior harm. *See United States v. Bivens*, 811 F.3d 840, 842–43 (6th Cir. 2016) ("Even if the same act is repeated during an ongoing, continuous pattern of criminality between a single defendant and his victim, each act usually amounts to a fresh harm the victim must face anew.").

Perez-Colon emphasizes that his crimes involved "the same child, the same motel stay, and the same means." Perez-Colon Br. 28. The first of these facts—the same victim—is a necessary but not a sufficient condition for grouping the counts under Guideline § 3D1.2(b). And we are not convinced that the remaining facts show the separate productions of child pornography were "connected by a common criminal objective or constitute[d] part of a common scheme or plan." U.S.S.G. § 3D1.2(b).

A broadly viewed "common criminal objective"—producing child pornography—cannot satisfy § 3D1.2(b) where the separate acts advanced distinct, narrower objectives—producing specific images and videos—and caused distinct harms to Minor 1. Otherwise, a defendant who regularly abused the same victim to produce child pornography for weeks or months would be entitled to grouping. This

8

reasoning would likewise require grouping of all the charges against a defendant who held a victim captive in the same location and repeatedly abused her for a long time. Doing so would read "substantially the same harm" out of the Guideline because that victim surely would have suffered more than a single harm. *See Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001) (concluding that a statutorily defined term cannot be "read[] . . . out of the statute" and instead retains "independent significance"). For similar reasons, that Perez-Colon committed his crimes using the same means and during the same motel stay does not show the crimes were part of "a common scheme or plan" under the Guideline.[5]

Our conclusion aligns us with other Courts of Appeals, which separately group sex-crime counts involving the same victim. *See Bivens*, 811 F.3d at 842–43 (production of child pornography and related crimes); *United States v. Kiel*, 454 F.3d 819, 822 (8th Cir. 2006) (production of child

---

[5] We may defer to commentary only if, among other conditions, the Guideline is "genuinely ambiguous." *United States v. Nasir*, 17 F.4th 459, 470-71 (3d Cir. 2021) (en banc). Though we perceive no ambiguity, we note that the commentary reflects our conclusion. It instructs courts to group crimes only if they "represent essentially one composite harm," not if they create "separate instances of fear or risk of harm." U.S.S.G. § 3D1.2 cmt. n.4. Production of child pornography creates distinct instances of fear or harm and is more analogous to the commentary's examples of non-grouped crimes (rape and robbery) than grouped crimes (mail and wire fraud, conspiracy to commit extortion and extortion, and auto theft and altering a vehicle identification number). *Id.*

pornography); *United States v. Wise*, 447 F.3d 440, 446 (5th Cir. 2006) (same); *United States v. Von Loh*, 417 F.3d 710, 713 (7th Cir. 2005) (statutory rape); *United States v. Vasquez*, 389 F.3d 65, 77 (2d Cir. 2004) (sexual misconduct with an inmate).[6]

The cases Perez-Colon cites are unconvincing. First, he describes the Sixth Circuit's opinion in *United States v. Bivens* as holding that "production of ten videos over [one] weekend in hotel room [were] properly treated as single instance of harm." Perez-Colon Br. 30. But Bivens faced a single count of production for those ten videos, so they did not pose a grouping question. 811 F.3d at 842. And consistent with our reasoning, the *Bivens* court refused to group that ten-video production count with another count of production based on conduct that took place a few weeks later. *Id.* at 843. Perez-Colon's second case, *United States v. Ward*, is inapt because "[w]hether the counts were properly grouped [was] not at issue on appeal." 626 F.3d 179, 181 n.3 (3d Cir. 2010).

Perez-Colon also invokes the rule of lenity. But that doctrine applies only when "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty." *United States v. Castleman*, 572 U.S. 157, 172–73 (2014). The Guideline involved here is not grievously ambiguous, so the rule of lenity does not apply.

Finally, Perez-Colon argues that there must be a limiting principle as to how close in time is too close to group sex crimes separately. District courts are in the best position to

---

[6] Because these cases pre-dated *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019), they relied on Guidelines commentary. So the analysis in those opinions differs slightly from ours.

10

draw that line based on the unique facts of each case, subject to our review. *See Buford v. United States*, 532 U.S. 59, 64–65 (2001). It would be unwise for us, in the abstract, to adopt a strict temporal limit for how close is too close, if such a limit even exists. In this case, the District Court did not err in finding that Perez-Colon's two acts of producing of child pornography, three days apart, caused separate harms justifying separate grouping. So the Court properly applied a two-level increase to the combined offense level under § 3D1.4.

## III

Perez-Colon also challenges the District Court's determination that Minor 1 was in his "custody, care, or supervisory control" at the time of the offenses. *See* U.S.S.G. § 2G2.1(b)(5).

## A

The parties dispute the standard of review that applies to this issue. After reviewing Supreme Court and Third Circuit precedent, we hold that clear error review is appropriate.

In *Buford v. United States*, the Supreme Court addressed the proper standard of review for "applying a Sentencing Guidelines term to undisputed facts." 532 U.S. at 64. The Guidelines provision at issue in *Buford* required courts to count "related" convictions as a single prior felony under the career-offender enhancement in U.S.S.G. § 4B1.1. *Id.* at 60–61 (analyzing now-amended versions of U.S.S.G. §§ 4B1.2(c) and 4A1.2(a)(2)). The Court settled on abuse of discretion review "[i]n light of the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court, and the limited value of uniform court of appeals precedent." *Id.* at

66. The Court remarked that the "deference that is due depends on the nature of the question presented." *Id.* at 63 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)).

Applying *Buford*, we reviewed for clear error the application of a Guidelines enhancement under § 2C1.2 for certain offenses by a public official in a "high-level decision-making or sensitive position," an analogous question to that presented in this appeal. *United States v. Richards*, 674 F.3d 215, 219–23 (3d Cir. 2012). In *Richards*, we noted that 18 U.S.C. § 3742(e) requires appellate courts to "give due deference to the district court's application of the guidelines to the facts." *Id*. at 219 n.2. And we reasoned that the "legal test . . . [was] in essence a factual inquiry" under which the district court simply "needs to find facts that will answer—either yes or no—whether the government official possesses 'direct authority to make decisions' for a government entity or whether the official possesses 'substantial influence over the decision-making process.'" *Id.* at 221 (quoting U.S.S.G. § 2C1.2(b)(3) cmt. n.3(A)). The "highly factual nature of this inquiry, and a trial court's relative institutional advantages in conducting it," together with the fact that appellate review would be "of little help in future cases," warranted deference. *Id.* We selected clear error review over abuse of discretion because the latter is appropriate "where there is room for interpretation as to whether the facts satisfy an essentially legal test, or where a district court can exercise some discretion in deciding whether to apply particular Guideline provisions," that is, where the court is "choosing among different courses of action." *Id.* at 223 (quotation marks and citation omitted).[7]

---

[7] We have reviewed several other Guidelines applications for clear error. *See, e.g.*, *United States v. Rodriguez*, 40 F.4th 117,

12

*Buford* and *Richards* dictate clear error review here. First, the question of whether a minor is "in the custody, care, or supervisory control" of a defendant is highly fact-specific; it requires a case-by-case analysis of the defendant's relationship to the victim and the setting in which the crime was committed. *See* U.S.S.G. § 2G2.1(b)(5). Second, "the district court is in a better position than the appellate court to decide whether a particular set of individual circumstances demonstrates" care or supervisory control. *Buford*, 532 U.S. at 64. Third, whether the facts establish care or supervisory control is not "readily resolved by reference to general legal principles and standards alone" but instead "grows out of, and is bounded by, case-specific detailed factual circumstances." *Id.* at 65. Finally, like in *Richards*, "our role is more appropriately described as determining whether the District Court clearly erred in its determination that the facts fit within the meaning of [§ 2G2.1(b)(5)], rather than whether it abused its discretion by adopting one set of factual findings instead of another." 674 F.3d at 223.

For these reasons, we review application of the § 2G2.1(b)(5) enhancement for clear error. But like in *Richards*, we think our choice between clear error and abuse of

---

120–21 (3d Cir. 2022) (§ 2D1.1(b)(12) enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance"); *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018) (§ 3B1.1(a) enhancement for when a defendant is "an organizer or leader of a criminal activity that involved five or more participants" and § 2B1.1(b)(10)(A) enhancement for when a scheme is relocated to evade law enforcement or regulatory officials).

discretion is "not very significant" as our analysis would be similar under either standard. *Id.* [8]

B

1

Turning to the merits of the § 2G2.1(b)(5) enhancement, we begin by rejecting Perez-Colon's view that it requires "parent-like" authority. Perez-Colon Br. 18 (citing *United States v. Harris*, 999 F.3d 1233, 1237 (9th Cir. 2021)). Care and supervisory control require "some degree of authority over or responsibility for" the victim, *United States v. Blackbird*, 949 F.3d 530, 532 (10th Cir. 2020)—something more than "mere presence," *Harris*, 999 F.3d at 1237. But that standard does not require parent-like authority.

Perez-Colon relies on two canons of construction. He starts with the canon against superfluity, arguing that the Guidelines provision's first clause, which applies the enhancement to any "parent, relative, or legal guardian" of the

---

[8] Perez-Colon cites two cases decided after *Richards* where we applied de novo review to Guidelines application: *United States v. Bell*, 947 F.3d 49, 54 & n.2 (3d Cir. 2020) and *United States v. Douglas*, 885 F.3d 124, 129 (3d Cir. 2018) (en banc). *Bell* is unavailing because it strays from *Richards* for the reasons explained in Judge Chagares's partial dissent, *see* 947 F.3d at 63–65 (Chagares, J., dissenting), and the prior opinion in *Richards* controls. *See Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008). *Douglas* does not apply because it relied on a pre-*Buford* line of cases without conducting any analysis of the proper standard of review. *See* 885 F.3d at 129.

victim, would be superfluous if the "custody, care, or supervisory control" clause applied to any type of supervision. *See United States v. Brooks*, 610 F.3d 1186, 1200 (9th Cir. 2010). This argument fails because relatives and parents do not always have custody or supervision of their minor relatives. So the first clause maintains independent meaning even if we read the second clause broadly.

Perez-Colon next cites *ejusdem generis*, which requires us to construe "otherwise in the custody, care, or supervisory control of the defendant" to embrace similar levels of control as the preceding list: "parent, relative, or legal guardian." "Under that rule, when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008). This canon is unhelpful to Perez-Colon because his focus on "parent" ignores "relative." The authority exercised by a relative can vary widely depending on the relative and is often less than "parent-like."

Simply put, "care[] or supervisory control" does not require parent-like authority.[9]

---

[9] The Guidelines commentary again is consistent with our interpretation. It states that the enhancement "includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently" and applies, for example, to "teachers, day care providers, baby-sitters, or other temporary caretakers." U.S.S.G. § 2G2.1 cmt. n.5(A).

15

Having determined that parent-like authority is not required, we conclude that the District Court's application of a two-level enhancement under Guideline § 2G2.1(b)(5) was not clearly erroneous. Two facts highlighted by the District Court are particularly convincing. First, as a toddler, the victim required constant supervision. *See Blackbird*, 949 F.3d at 532 n.2 (considering age a relevant factor). Second, the mother intentionally left the child alone in the room with Perez-Colon, who was temporarily living there, while she showered. This distinguishes Perez-Colon's case from those where, for example, the defendant found the victim "home alone." *Id.*; *see also United States v. Blue*, 255 F.3d 609, 611, 615 (8th Cir. 2001) (concluding a materially identical enhancement under § 2A3.1(b)(3)(A) did not apply when the defendant abused the victim while the mother was in a drunken "stupor," because "the government failed to establish that the mother transferred care to [the defendant]").

On these facts, we are not "left with a definite and firm conviction," *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010) (citation omitted), that the District Court erred in determining that Minor 1 was in Perez-Colon's "care[] or supervisory control," U.S.S.G. § 2G2.1(b)(5).

IV

Perez-Colon also challenges his five-point increase for "engag[ing] in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b). The District Court applied this enhancement based on Perez-Colon's prior sexual abuse of a minor. As will be explained below, the plain language of § 4B1.5(b) requires the sentencing court to first identify the

conduct in which the defendant engaged. Where, as here, the defendant's conduct can only qualify as "prohibited sexual conduct" if it constituted an offense described in 18 U.S.C. § 2426(b)(1)(B), the court must then consider whether the defendant's conduct fell within one of the listed federal or state crimes. Thus, the first part of the analysis does not call for the application of the categorical approach. The second step of the analysis does require a type of categorical analysis because it requires the court to consider whether the identified conduct falls within a state law offense that is equivalent to one of the enumerated federal crimes. Applying this analysis, we conclude the District Court erred, but its mistake was harmless.

## A

The parties dispute whether the categorical approach applies to the Guidelines definition of "prohibited sexual conduct." Reviewing that question de novo, *United States v. Dahl*, 833 F.3d 345, 349 n.4 (3d Cir. 2016), we hold that the categorical approach does not apply to Guideline § 4B1.5(b).

The Guidelines define "prohibited sexual conduct" as: "(i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography." *Id.* cmt. n.4(A).[10] To establish a "pattern

---

[10] *United States v. Nasir*, 17 F.4th at 470–71, which generally prohibits our deference to the commentary to unambiguous Guidelines, presents no issue with our reliance on the commentary in this situation. Perez-Colon's challenge to the enhancement, and the Government's argument for its application, both assume the correctness of and rely on the commentary's definition of "prohibited sexual conduct." To reach their arguments, we must too. But we state no opinion

17

of activity involving prohibited sexual conduct," the Government cites Perez-Colon's 2014 Pennsylvania delinquency adjudication of sexual assault and indecent assault and the underlying evidence that Perez-Colon sexually assaulted a child over the course of nearly a decade.

Perez-Colon invokes the categorical approach to argue that the enhancement does not apply because the Pennsylvania laws under which he was adjudicated delinquent are broader than their federal counterparts. *See generally Shular v. United States*, 140 S. Ct. 779, 783–84 (2020). The Government concedes that the Pennsylvania offenses are broader because they encompass reckless conduct. Even so, the Government rightly argues that the categorical approach does not apply to this Guidelines provision because it is triggered by prior *conduct*, not a prior *conviction*.

We use the categorical approach to determine whether "a defendant's prior federal or state conviction qualifies as a predicate offense." *Dahl*, 833 F.3d at 349. It applies when increased statutory penalties or Guidelines enhancements are triggered by a certain criminal offense. *See, e.g.*, *Shular*, 140 S. Ct. at 783; *Dahl*, 833 F.3d at 349. Under that approach, "[s]entencing courts may look only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quotation marks and citation omitted). If the prior

---

whether "prohibited sexual conduct" as used in § 4B1.4(b) is ambiguous, and if so whether the commentary's definition is a reasonable interpretation of it. *See Nasir*, 17 F.4th at 471.

offense is defined more broadly than the comparator offense, it cannot serve as a predicate. *Dahl*, 833 F.3d at 355.

The categorical approach presupposes some triggering *offense*. Otherwise, the sentencing court would have no elements to consider. Here, Guideline § 4B1.5(b) asks if "the defendant engaged in a pattern of activity involving prohibited sexual *conduct*," § 4B1.5(b) (emphasis added), which need not result in a conviction, *id.* cmt. n.4(B)(ii). This language directs courts away from the categorical approach by focusing on whether a defendant engaged in certain *conduct* rather than whether he had certain *convictions*. *Cf. Mathis v. United States*, 579 U.S. 500, 511 (2016) ("By enhancing the sentence of a defendant who has three 'previous convictions' for generic burglary—rather than one who has thrice committed that crime—Congress indicated that the sentencer should [apply the categorical approach]." (citation omitted)). That a defendant happened to be convicted (or adjudicated delinquent) for the conduct is immaterial. So the categorical approach does not apply.

Contrary to Perez-Colon's argument, our holding tracks *United States v. Dahl*, where we held the categorical approach applies to Guideline § 4B1.5(a), which references a prior "sex offense conviction." 833 F.3d at 349. Unlike that provision, here subsection (b) of § 4B1.5 refers to conduct. Because *Dahl* involved a Guidelines provision that instructs courts to look at a prior *conviction*, applying the categorical approach there made sense. Indeed, we highlighted in *Dahl* that "a sentencing enhancement's use of the phrase 'conviction' indicates Congress's intent to apply the categorical approach." *Id.* at 350.

19

Perez-Colon is correct that neither the presence of the word "conduct" nor the lack of the word "conviction" is outcome determinative. Still, the inquiry is a functional one, asking whether the text requires us to examine a defendant's conduct or his statutory offense. We did note in *Dahl* that "the 'categorical approach' applies notwithstanding a predicate statute's reference to conduct." *Id.* (citing *Johnson v. United States*, 576 U.S. 591 (2015)). But the predicate statute discussed there expressly required an underlying conviction— for some "conduct"—and the central point was that "the important textual reference for triggering the categorical approach is 'conviction,' not 'conduct.'" *Id.* (citing *Johnson*, 576 U.S. at 593); *see* 18 U.S.C. § 924(e)(2)(B). So *Dahl* suggests that though a statute's reference to "conduct" does not *necessarily* prevent the application of the categorical approach, nor does it mean that when a statute or Guideline addresses *only* conduct—regardless of a resulting conviction—the categorical approach applies.

As for "conviction," it is true that the word "is hardly a prerequisite for the categorical approach." *United States v. Davis*, 139 S. Ct. 2319, 2335 (2019). But the Supreme Court has emphasized that "conviction" is a powerful indicator that the approach should apply. *See Mathis*, 579 U.S. at 511; *Johnson*, 576 U.S. at 604; *see also Dahl*, 833 F.3d at 358. And *Davis* observed only that the *word* was not required—it did not apply the categorical approach where there was no conviction to examine. *See* 139 S. Ct. at 2324.

In sum, because Guideline § 4B1.5(b) asks whether a defendant engaged in certain conduct regardless of whether it led to a conviction, the categorical approach does not apply.

20

B

The Government's successful parry against the categorical approach does not resolve this issue. We must now consider whether Perez-Colon's *actual conduct* was "prohibited sexual conduct." It was not.

The parties agree that Perez-Colon's prior conduct was neither production nor trafficking of child pornography. *See* U.S.S.G. § 4B1.5 cmt. n.4(A). So to be "prohibited sexual conduct," it must have constituted an "offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)." *Id.* Those statutory provisions, which define "prior sex conviction," apply to an offense:

> (A)     under this chapter, chapter 109A, chapter 110, or section 1591; or
>
> (B)     under State law for an offense consisting of conduct that would have been an offense under a chapter referred to in subparagraph (A) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States.

18 U.S.C. § 2426(b)(1).

Subparagraph (A) incorporates statutes defining certain sex crimes for conduct in federal maritime or territorial jurisdiction. Two of these would cover Perez-Colon's prior sexual abuse of a minor *if committed in such jurisdiction*: 18 U.S.C. § 2241(c) and 18 U.S.C. § 2243(a). In the Government's view, this means that Perez-Colon's conduct "would have violated federal statutes." Gov't Br. 37. But the Government does not claim any of Perez-Colon's conduct was

21

committed in federal maritime or territorial jurisdiction. And because an "offense described in" subparagraph (A) includes that jurisdictional element, Perez-Colon's conduct in Pennsylvania was not "an offense described in" § 2426(b)(1)(A).

As for subparagraph (B), it requires application of the categorical approach through the back door. We must determine whether Perez-Colon's conduct constituted "an offense described in" § 2426(b)(1)(B)—*i.e.*, a violation "under State law for an offense consisting of conduct that would have been a[] [federal] offense" had it been committed in federal maritime or territorial jurisdiction. 18 U.S.C. § 2426(b)(1)(B). To do so requires identifying a state law that the conduct violated (though Perez-Colon need not have been charged or convicted of it). We have already held § 2426(b)(1)(B) requires the categorical approach. *See Dahl*, 833 F.3d at 349–51. So a state law offense cannot be "described in" § 2426(b)(1)(B) if the state statute is categorically broader than the federal statutes in subparagraph (A). The Government concedes that the Pennsylvania laws under which Perez-Colon was adjudicated delinquent are broader than the federal comparators, and it identifies no other law he violated that is a categorical match. Perez-Colon's prior conduct therefore was not an offense described in § 2426(b)(1)(B).

To recap: The categorical approach does not apply to a § 4B1.5(b) enhancement for a pattern of prohibited sexual conduct. But a defendant's actual conduct cannot be "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)" unless the conduct either violated one of the relevant federal criminal laws or a categorical state-law equivalent. Because Perez-Colon's prior sexual abuse of a minor violated neither federal law nor a state-law categorical match, it was not "an offense

22

described in 18 U.S.C. § 2426(b)(1)(A) or (B)." So the District Court erred in applying the enhancement based on that conduct.[11]

C

Although the District Court should not have applied the § 4B1.5(b) enhancement, we hold its error was harmless, largely because it did not affect Perez-Colon's advisory Guidelines range. *See United States v. Raia*, 993 F.3d 185, 195 (3d Cir. 2021). The District Court calculated a total offense level of 48, which included the five-level pattern of prohibited sexual conduct enhancement. Because the Guidelines Sentencing Table sets 43 as the maximum offense level, increases above that level are inconsequential: "[a]n offense level of more than 43 is to be treated as an offense level of 43." U.S.S.G. Ch. 5, Pt. A & cmt. n.2. So the erroneous five-level enhancement affected neither Perez-Colon's total offense level—which was 43 with or without the enhancement—nor his Guidelines recommendation of 200 years' imprisonment. There is therefore "a high probability" the error did not affect Perez-Colon's sentence. *See Raia*, 993 F.3d at 195.

Perez-Colon disputes this reasoning, claiming the "court attended closely to offense levels above 43" and "memorialized its level '48' finding in the Statement of Reasons." Perez-Colon Br. 23. True enough, but the District

---

[11] The Government argues in the alternative that the § 4B1.5(b) enhancement could be justified by the conduct underlying Perez-Colon's two production of child pornography convictions in this case. Because we conclude that any error was harmless, we decline to reach this argument.

Court recognized that applying an offense level of 43 is "the way the Guidelines work in a case such as this." Supp. App. 298. Perez-Colon admits as much elsewhere in his brief, describing the Court's three-level reduction for acceptance of responsibility (from a total offense level of 51 to 48) as "a nullity" that "has no effect because the Guidelines' sentencing grid ends at level 43." Perez-Colon Br. 8 & n.3. The same is true of a five-level enhancement in the total offense level from 43 to 48.

Three more facts support our harmless error conclusion. First, the Court varied downward substantially from the Guidelines range, which makes "an error . . . more likely to be harmless." *United States v. Zabielski*, 711 F.3d 381, 388 (3d Cir. 2013). Second, after calculating the advisory Guidelines range and considering all the sentencing factors under 18 U.S.C. § 3553(a)(2), the District Court "concluded that [the 55-year sentence] is the fair, reasonable, and appropriate sentence without regard to how the Court ruled on any given individual issue on the Guidelines enhancements or additions or subtractions." Supp. App. 352; *see Zabielski*, 711 F.3d at 388 ("[I]t usually will be difficult for an appellate court to conclude with sufficient confidence that the same sentence would have been imposed *absent a clear statement to that effect by the sentencing judge*." (emphasis added) (citation omitted)). Third, the Court rejected a two-level vulnerable victim enhancement proposed by the Government, stating it would be "piling on" even though the Court "underst[ood] the Government saying that analytically this would be an appropriate time to use such an enhancement." Supp. App. 281–82. The Court recognized that enhancement would be an idle exercise because 43 was the maximum offense level.

For the reasons stated, it is clear that the § 4B1.5(b) enhancement "did not affect the district court's selection of the sentence imposed." *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008). The error was harmless and remand is unnecessary.

V

Perez-Colon challenges for the first time on appeal his Count Eight conviction for attempted distribution of child pornography under 18 U.S.C. § 2252(a)(2). The image charged in Count Eight displayed the genitals of Minor 2, whose mother had taken the picture and sent it to Perez-Colon for a benign medical purpose—to show him the toddler's rash. Perez-Colon then tried to distribute the image for unrelated, evil purposes. He argues the District Court erred in accepting his guilty plea to this count because the image was not produced using a minor engaged in "sexually explicit conduct," and therefore his conduct did not violate the statute. *See* 18 U.S.C. § 2252(a)(2).

We review the District Court's acceptance of Perez-Colon's guilty plea for plain error. *See United States v. Lessner*, 498 F.3d 185, 196 (3d Cir. 2007); Fed. R. Crim. P. 52(b). For plain error to exist, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If those conditions are met, we may correct the error "if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks and citations omitted).

Section 2252(a)(2) prohibits knowingly receiving, distributing, or reproducing "any visual depiction" if "(A) the

25

producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." "Sexually explicit conduct" means, as relevant here, "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A). Perez-Colon's challenge to his Count Eight conviction thus turns on whether the "producing" of the image involved and depicts "lascivious exhibition" of Minor 2's genitals.

Perez-Colon argues with some force that the relevant image originally fell outside the purview of the statute—it was not of "lascivious exhibition" when the mother took it—and that it cannot transform into such an image when he put it to malicious use. In *United States v. Villard*, we adopted the six "*Dost* factors" for analyzing lascivious exhibition, most of which focus on the objective nature of the image and at least three of which are not present here: a sexually suggestive setting, an unnatural pose or inappropriate attire, and a suggestion of coyness or willingness to engage in sexual activity. *See* 885 F.2d 117, 122 (3d Cir. 1989) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). We also stated that "[w]hen a picture does not constitute child pornography, even though it displays nudity, it does not become child pornography because it is placed in the hands of a pedophile, or in a forum where pedophiles might enjoy it." *Id.* at 125 (citation omitted).

The Government raises forceful arguments in response. The statute defines "producing" broadly to mean "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256(3). The definition is not limited to "an initial act of production, such as taking photographs," but also extends to acts in the chain of distribution. *United States v. Lively*, 852 F.3d 549, 560 (6th Cir. 2017) (collecting cases).

26

While the mother "produced" the image for medical purposes, Perez-Colon "intended . . . to elicit a sexual response in the viewer," *Dost*, 636 F. Supp. at 832, when he attempted to "produce" that image to others. In addition, two other *Dost* factors favor the Government: a focal point on genitalia and the minor's nudity. *See id.* at 122 (stating all six factors need not be present).

The upshot of these competing arguments is that any error the District Court might have made in accepting Perez-Colon's Count Eight guilty plea could not have been "'clear' or 'obvious'" based on unambiguous statutory language, binding precedent, or consensus among our sister courts. *United States v. Scott*, 14 F.4th 190, 198–99 (3d Cir. 2021) (quoting *Olano*, 507 U.S. at 734). For those reasons, we will affirm Perez-Colon's judgment of conviction on Count Eight under prong two of plain-error review.

\* \* \*

For the reasons stated, we will affirm Perez-Colon's judgment of conviction and sentence.