22-661-cr
*United States v. McGrain*

# United States Court of Appeals
# For the Second Circuit

---

August Term 2023
Submitted: November 29, 2023
Decided: June 21, 2024

No. 22-661-cr

---

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

JOSEPH MCGRAIN,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of New York
No. 20-cr-6113, Wolford, *Chief Judge*.

---

1

Before: LYNCH, PARK, and MENASHI, *Circuit Judges*.

Joseph McGrain was sentenced to 264 months' imprisonment for sexually abusing his then-girlfriend's fourteen-year-old daughter ("MV") and obstructing the investigation into that abuse. At sentencing, the district court (Wolford, *C.J.*) applied a two-offense-level enhancement under section 2G2.1(b)(5) of the Sentencing Guidelines because MV was in McGrain's "custody, care, or supervisory control" when McGrain abused her. It also denied McGrain an offense-level reduction for acceptance of responsibility because (1) McGrain merited an enhancement for obstruction of justice and (2) he continued to deny both that he had a sexual relationship with MV and that he convinced her to send him sexually explicit images. Finally, in weighing the 18 U.S.C. § 3553(a) sentencing factors, the district court determined that McGrain was dangerous because he refused to admit the full extent of his conduct. McGrain argues on appeal that each of these decisions was reversible error, that his sentence should be vacated, and that his case should be assigned to a different judge on remand.

We **AFFIRM** the judgment of the district court.

––––––––

Martin J. Vogelbaum, Office of the Federal Public Defender, Buffalo, NY, *for Defendant-Appellant*.

Katherine A. Gregory, Assistant United States Attorney *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

––––––––

PARK, *Circuit Judge*:

Joseph McGrain was sentenced to 264 months' imprisonment for sexually abusing his then-girlfriend's fourteen-year-old daughter ("MV") and obstructing the investigation into that abuse. At sentencing, the district court (Wolford, *C.J.*) applied a two-offense-level enhancement under section 2G2.1(b)(5) of the Sentencing Guidelines because MV was in McGrain's "custody, care, or supervisory control" when McGrain abused her. It also denied McGrain an offense-level reduction for acceptance of responsibility because (1) McGrain merited an enhancement for obstruction of justice and (2) he continued to deny both that he had a sexual relationship with MV and that he convinced her to send him sexually explicit images. Finally, in weighing the 18 U.S.C. § 3553(a) sentencing factors, the district court determined that McGrain was dangerous because he refused to admit the full extent of his conduct. McGrain argues on appeal that each of these decisions was reversible error, that his sentence should be vacated, and that his case should be assigned to a different judge on remand.

We affirm the judgment of the district court.

# I. BACKGROUND

A.     <u>Factual Background</u>[1]

In the late spring or early summer of 2018, McGrain's girlfriend and her fourteen-year-old daughter, MV, moved into his house to live with him full time. At one point, they shared a roughly 1,200-square-foot, two-level home with at least two of McGrain's daughters, the daughter of McGrain's cousin, and occasionally the daughters' boyfriends, one of whom was MV's brother.

MV's mother and McGrain shared some parenting responsibilities. MV's mother was her primary parent and caregiver, and she "usually" had the final say in parenting decisions. After some initial disagreements over how to raise MV, she and McGrain agreed to parent only their respective children. But McGrain still set the "rules of the house," often drove MV to school, and was usually the only person home with MV after school.

MV and McGrain grew close, and she confided in him about her difficulties changing schools after moving. She considered McGrain the "father [she] never had" and thought of one of his daughters as "a little sister." When MV had trouble sleeping one night, her mother trusted McGrain to lie down with her for comfort, as McGrain did for his biological daughter when she had nightmares and couldn't sleep.

---

[1] As discussed below, MV testified at a presentencing evidentiary hearing. The district court found her testimony credible and McGrain does not challenge that finding. This section is drawn from her testimony.

McGrain took advantage of that trust to abuse MV sexually for nearly a year and a half. The two had sexual intercourse roughly 400 times. McGrain regularly asked MV to send him sexually explicit images, including images of herself engaged in sexual acts. MV complied. And throughout, McGrain provided her with drugs, including LSD, fentanyl, MDMA, cocaine, and marijuana.

On March 27, 2020, MV's brother and others discovered sexually explicit messages with McGrain on MV's phone. They confronted MV. One of McGrain's daughters urged MV to delete all her communications with McGrain, which MV tried to do. She deleted messages and photographs shared via SnapChat, Instagram, and text, but forgot to erase her Facebook messages. MV's brother wanted to recover the messages and so reached out to their biological father and his girlfriend, who paid for the cellphone. The girlfriend then contacted law enforcement, and police came to the house that evening. McGrain was not arrested that night; the record is not clear as to why.

MV left McGrain's house the night the police came, but McGrain continued to contact her. When MV told McGrain that law enforcement had their Facebook messages, he told her that "death is my way out" and that if MV "really want[ed] it to end, then tell them you set it all up and lied." MV protested that she couldn't do that because the police already had the messages and everyone in her family knew what happened. To this McGrain responded, "well, I know what I need to do." Alarmed, MV asked McGrain to promise that he wouldn't kill himself, but McGrain didn't respond. MV then

5

told her biological father and his girlfriend about the conversation. They contacted the police a second time. Sometime the next day, McGrain deleted the contents of his cell phone. And a few days later, McGrain was arrested pursuant to a criminal complaint charging him with enticement of a minor, in violation of 18 U.S.C. § 2422(b).

## B. Procedural History

### 1. *McGrain's Indictment and Guilty Plea*

In August 2020, a grand jury in the Western District of New York returned an indictment charging McGrain with (1) enticement of a minor, in violation of 18 U.S.C. § 2422(b); (2) attempted obstruction of justice for pressuring MV to tell law enforcement that she had lied, in violation of 18 U.S.C. § 1512(b)(1); and (3) obstruction of justice for deleting the contents of his phone, in violation of 18 U.S.C. § 1519.

McGrain attempted to plead guilty without a plea agreement in April 2021. The district court refused to accept that plea because McGrain refused to admit that he had sex with MV or intended to do so when he was sending her the text messages on which the enticement charge was based. Instead, McGrain claimed that he had expressed his desire to have sex with MV only after she turned 18. Without an admission that McGrain had or intended to have sex with MV, his plea to the enticement charge would have lacked a factual basis, so the district court could not accept it. *See* Fed. R. Crim. P. 11(b)(3).

6

Later that month, the district court accepted a new guilty plea. Although McGrain continued to maintain that he did not have sex with MV, he admitted to encouraging her to send him sexually explicit photographs of herself. He denied, however, that he ever received any. The district court determined that enticing a minor victim to send sexually explicit images would violate 18 U.S.C. § 2422(b) and so would be a sufficient factual basis for the plea. It also determined that whether McGrain and MV had had sex would be "a sentencing issue" "[b]ecause [it] will impact the Guideline calculations, but it doesn't impact whether or not there is a factual basis to plead to the charge." McGrain's counsel agreed. The district court also accepted McGrain's guilty plea to the obstruction charges.

2. *The Evidentiary Hearing*

The district court scheduled an evidentiary hearing before sentencing to resolve factual disputes arising from McGrain's presentence investigation report ("PSR"). The PSR applied the cross-reference at section 2G1.3(c)(1) of the Sentencing Guidelines for child pornography to McGrain's section 2422(b) violation. McGrain's plea allocution triggered that cross-reference when he admitted that he had encouraged MV to send him sexually explicit images of herself.

Applying the cross-reference, McGrain's base offense level was 32. The PSR added: (1) two levels because MV was under the age of sixteen (section 2G2.1(b)(1)(B)); (2) two levels because MV was in McGrain's "custody, care, or supervisory control" (section 2G2.1(b)(5)); (3) two levels because the offense involved the use of a computer (section 2G2.1(b)(6)(B)); (4) two levels for obstruction of

7

justice (section 3C1.1); and (5) five levels because McGrain had engaged in a pattern of prohibited sexual conduct (section 4B1.5(b)(1)). Finally, the PSR subtracted two levels for acceptance of responsibility (section 3E1.1(a)), for a total offense level of 43.

McGrain objected to the PSR, primarily contesting that he ever had a physical sexual relationship with MV or that she was ever in his custody, care, or supervisory control. He also filed a letter expressing his remorse, saying that he was "again claiming responsibility for [his] actions." But he did not admit to his sexual abuse of MV or to receiving sexually explicit images from her. After the district court determined that it would need to hold an evidentiary hearing to address McGrain's objections to the PSR, he tried to withdraw nearly all of them. He continued to object, however, to the application of the section 2G1.3 cross-reference.

The district court determined that an evidentiary hearing remained necessary because McGrain refused to admit that he had sexually abused MV and the resolution of that factual dispute would impact the Guidelines enhancements that would apply in calculating his total offense level. The hearing took place over two days in December 2021. MV testified at length about McGrain's sexual abuse as well as his demands that she send him sexually explicit images.

3.    *The District Court's Conclusions and Sentencing*

On February 1, 2022, the district court issued a decision finding MV's testimony "entirely credible and believable," including the portions establishing that McGrain had sex with MV "repeatedly and consistently from the time she was 14 years old until on or about

8

March 27, 2020." *United States v. McGrain*, 583 F. Supp. 3d 392, 398 (W.D.N.Y. 2022). It found that McGrain's "version of events" was "not credible" and that McGrain's claim at the plea proceeding that he had not had sex with MV was perjurious. *Id.* at 399. The district court found that McGrain had sex with MV, *id.*; that he caused her to produce child pornography, *id.* at 399-400; and that MV was in his custody, care, or supervisory control, *id.* at 401-02.

The district court sentenced McGrain to 264 months' imprisonment, despite the fact that the Guidelines recommended a life sentence. It calculated an offense level of 45 before reducing to the maximum offense level of 43. The district court generally followed the PSR's calculation, including by applying the child pornography cross-reference under section 2G1.3(c)(1), but it applied no reduction for acceptance of responsibility. The district court based its sentence on the offense conduct, the impact on MV, McGrain's efforts to cover up the conduct, and McGrain's failure to admit the full extent of what he had done, which demonstrated that he continued to be "dangerous": "[Y]ou haven't [admitted the truth] up to this point. And so you're not remorseful, and, to me, that demonstrates how dangerous you are because of the fact that you have refused, after all of this, after an evidentiary hearing, after having the minor victim come in and testify, bringing your daughters in here to testify, you still, to this day, refuse to admit the truth."

This timely appeal followed.

## II. DISCUSSION

McGrain makes three arguments on appeal. First, he challenges the application of the "custody, care, or supervisory control" enhancement under section 2G2.1(b)(5). Second, he claims the district court erred by denying him credit for acceptance of responsibility under section 3E1.1(a). And third, he asserts that the district court's factual finding that he is dangerous—and therefore merits a greater sentence under 18 U.S.C. § 3553(a)—was not supported by the record. We reject each of these arguments and affirm the judgment of the district court.

### A.  "Custody, Care, or Supervisory Control" Enhancement

We review a district court's interpretation and application of the Guidelines *de novo*, and its findings of fact relevant to the Guidelines' application for clear error. *See United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015). McGrain argues that the "custody, care, or supervisory control" enhancement should not apply because it requires a defendant to have a "pre-existing parent-like position of authority." Appellant's Br. at 37 (quoting *United States v. Brooks*, 610 F.3d 1186, 1201 (9th Cir. 2010)). We disagree. Parent-like authority is sufficient to merit the enhancement, but it is not necessary. Although we have not previously addressed in a published opinion the types of

relationships to which the enhancement applies,[2] the plain language of section 2G2.1(b)(5) encompasses McGrain's relationship with MV.

We begin with the text. Section 2G2.1(b)(5) of the Guidelines requires a two-level enhancement "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S.S.G. § 2G2.1(b)(5). Under the first part of this Guideline, the enhancement applies to "a parent, relative, or legal guardian of the minor" by virtue of their relationship alone. The second part then includes other defendants without such a

---

[2] In a summary order, we have considered the relationships covered by section 2A3.1(b)(3)(A), which applies in criminal sexual abuse cases and, like section 2G2.1(b)(5), provides for a two-level enhancement if the victim was "in the custody, care, or supervisory control of the defendant." U.S.S.G. § 2A3.1(b)(3)(A). The relevant application note for section 2A3.1(b)(3)(A) is also virtually identical to the note for section 2G2.1(b)(5). In *United States v. Jass*, 331 F. App'x 850 (2d Cir. 2009), we concluded that the defendant's "long-term status as the live-in girlfriend of the child's father permitted the district court to find that her status was sufficiently akin to that of a stepmother to support a finding of some degree of custody and supervisory control over the child even if the father exercised primary custody and control." *Id.* at 857. We also noted that "the district court's factual finding regarding [the defendant's] custody and supervisory control over the child victim[]" is reviewed "for clear error." *Id.*; *see also United States v. Perez-Colon*, 62 F.4th 805, 812 (3d Cir. 2023) ("[W]e review application of the § 2G2.1(b)(5) enhancement for clear error."); *United States v. Alfaro*, 555 F.3d 496, 499 (5th Cir. 2009) (stating, in reviewing a district court's application of the enhancement under § 2G2.1(b)(5), that "[w]e review for clear error this application of the Sentencing Guidelines in question to the facts").

11

relationship but who nonetheless had "custody, care, or supervisory control" of the minor. The word "otherwise" indicates that parents, relatives, and legal guardians are examples of those who exercise custody, care, or supervisory control but that such authority is not restricted to parents, relatives, and legal guardians.

The question whether a minor is in the "custody, care, or supervisory control" of a defendant "requires a case-by-case analysis of the defendant's relationship to the victim and the setting in which the crime was committed." *United States v. Perez-Colon*, 62 F.4th 805, 812 (3d Cir. 2023). As the application note explains, "[i]n determining whether to apply this adjustment, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." U.S.S.G. § 2G2.1 cmt. n.5(A).

And although a relationship qualifying for the enhancement may often be "parent-like," the text of the Guideline is not so limited. "[C]ustody, care, or supervisory control" may encompass a range of other relationships in which a minor is "entrusted to the defendant, whether temporarily or permanently." *Perez-Colon*, 62 F.4th at 813 n.9 (quoting U.S.S.G. § 2G2.1 cmt. n.5(A)); *see also id.* at 813 ("Care and supervisory control require some degree of authority over or responsibility for the victim—something more than mere presence. But that standard does not require parent-like authority." (cleaned up)). "The authority exercised by a relative can vary widely depending on the relative and is often less than 'parent-like.'" *Id.* at 813.

Application note 5(A) to section 2G2.1 reinforces this understanding. It explains that "[s]ubsection (b)(5) is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement." U.S.S.G. § 2G2.1 cmt. n.5(A). This note supports the ordinary reading of the text, which contemplates that a defendant may have the requisite degree of authority over the minor without qualifying as a parent, relative, or legal guardian. We thus reject McGrain's proposed requirement of parent-like authority as inconsistent with the text of section 2G2.1.

Applying the Guideline to this case, McGrain's relationship with MV easily merits the enhancement. Even though MV's mother was her primary parent, the district court correctly determined that McGrain shared some parental responsibilities with her. In particular, McGrain lived with MV for over a year and a half. He set the rules of the household for MV. He was frequently alone with MV both while driving her to school and at home after school. MV thought of McGrain as the "father [she] never had." Both MV and her mother trusted McGrain to comfort her, including by lying down with MV at night. It is this relationship of trust and care that McGrain abused by victimizing MV.

The Eighth Circuit confronted a virtually identical fact pattern and applied the two-level enhancement under section 2A3.1(b)(3)(A) in *United States v. Balfany*, 965 F.2d 575 (8th Cir. 1992). In that case,

13

the defendant and the victim's mother "lived together as husband and wife," and "[a]lthough they often disciplined their own children, . . . they shared many household responsibilities, including caring for the children at times." *Id.* at 585. In addition, on "at least one occasion" when sexual abuse occurred, the victim "was clearly in [the defendant's] sole custody and care." *Id.* We likewise conclude that the two-level enhancement under section 2G2.1(b)(5) applies here because McGrain, among other things, lived with MV's mother, shared household responsibilities and parenting authority, and was frequently trusted to care for MV alone.

In response, McGrain points to two decisions of other Circuits finding the "custody, care, or supervisory control" enhancement to be inapplicable. But neither resembles this case. In *United States v. Blue*, 255 F.3d 609 (8th Cir. 2001), the Eighth Circuit concluded that the victim's mother had never transferred care of the child to the defendant, who assaulted the child when they were temporarily in the bathroom together while the mother was home. *Id*. at 614-15. Here, McGrain lived with MV when the abuse occurred and was trusted to supervise her alone at least some of the time, including when the abuse began. *See id.* (distinguishing cases in which defendants babysat or supervised the victims while their parents were absent). And in *United States v. Blackbird*, 949 F.3d 530 (10th Cir. 2020), the government "had not presented one iota of evidence that the defendant actually controlled any aspect of the [victim's] life." *Id*. at 532 (cleaned up). But here, McGrain set household rules and had some say in parenting decisions for MV.

14

We thus affirm the district court's application of the enhancement.

B.      Acceptance of Responsibility Reduction

Section 3E1.1(a) of the Sentencing Guidelines allows a district court to grant a two-level reduction in a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."   U.S.S.G. § 3E1.1(a).   McGrain challenges the district court's denial of this reduction.

"Whether the defendant has accepted responsibility is a factual question, and a district court's determination in this regard should not be disturbed unless it is without foundation."   *United States v. Taylor*, 475 F.3d 65, 68 (2d Cir. 2007) (cleaned up).   The reduction for acceptance of responsibility "is unavailable, absent 'extraordinary circumstances,' to a defendant properly found to merit an obstruction-of-justice enhancement."   *United States v. McLeod*, 251 F.3d 78, 82-83 (2d Cir. 2001) (quoting *United States v. Champion*, 234 F.3d 106, 110 (2d Cir. 2000)).

McGrain does not contest that he merited an enhancement for obstruction of justice.    Instead, he argues that this is an "extraordinary" case for several reasons, including because (1) "much" of his obstructive conduct occurred before his arrest; (2) he pleaded guilty; (3) his failure to admit to a sexual relationship with MV led to his admission that he attempted to get her to send him sexual images, increasing his Guidelines range; and (4) his acceptance of responsibility increased over time.  We reject these arguments and

15

affirm the district court's conclusion that this case did not present "extraordinary circumstances."

First, it is not extraordinary that McGrain's obstruction occurred before his purported acceptance of responsibility. Engaging in conduct that indicates acceptance of responsibility after having obstructed justice does not necessarily entitle a defendant to a reduction under section 3E1.1(a). *See Champion*, 234 F.3d at 108, 111 (affirming denial of acceptance-of-responsibility reduction when the defendant "made false statements at the time of his arrest, submitted a perjurious affidavit, and had two witnesses testify falsely on his behalf" even though he later "confessed his guilt and provided information to the police"). In any event, to whatever extent a sincere and complete acceptance of responsibility after earlier obstructive conduct could merit application of the sentence reduction in an appropriate case, the district court here found that McGrain never took responsibility or expressed remorse for his sexual abuse of MV.

Second, the fact that McGrain pleaded guilty and admitted to certain facts concerning his relationship with MV does not entitle him to a reduction for acceptance of responsibility. We have held that "[a]lthough a guilty plea, combined with truthful statements about the defendant's offense and other relevant conduct, is significant evidence of acceptance of responsibility, it can be outweighed by conduct that is inconsistent with acceptance of responsibility." *United States v. Strange*, 65 F.4th 86, 91 (2d Cir. 2023) (internal quotation marks omitted) (quoting *United States v. Ortiz*, 218 F.3d 107, 108 (2d Cir. 2000)). The application notes similarly provide that "[a]

16

defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."  U.S.S.G. § 3E1.1 cmt. n.3.

Third, McGrain's argument that his admission to soliciting sexual images from MV increased his Guidelines range is incorrect. Without applying the section 2G1.3(c)(1) cross-reference and keeping everything else the same, McGrain's offense level under the PSR would have been 43.  Although the district court calculated an offense level of 45 using the cross-reference, 43 is the maximum offense level. So McGrain's Guidelines range would have been life regardless of the cross-reference.[3]

Finally, McGrain's claim that he should receive credit for an incomplete, though increasing, acceptance of responsibility is without support and without merit.  We see no basis to disturb the district court's determination that McGrain showed a "lack of remorse."

The district court's factual determination that McGrain had not accepted responsibility for his actions was well justified and not without foundation.  We thus affirm the district court's denial of a reduction for acceptance of responsibility.

---

[3] The district court calculated a base offense level of 28 under section 2G1.3(a)(3) of the Guidelines without the cross-reference.  It added five two-level increases under sections 2G1.3(b)(1)(B), 2G1.3(b)(2)(B), 2G1.3(b)(3)(B), 2G1.3(b)(4)(A), and 3C1.1.  That brought McGrain's offense level to 38, which he does not challenge.  But the five-level increase under section 4B1.5(b)(1), which the district court applied with the cross-reference, also would have applied without it.  That makes McGrain's offense level 43 regardless of the cross-reference.

C.     Dangerousness Finding

We review the district court's finding that McGrain was dangerous for plain error because he did not object to it.  *See United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015).

To show plain error, "an appellant must demonstrate that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Id.* (cleaned up).

The district court determined that McGrain was dangerous based on the fact that he "h[ad] not been honest about what [he] did."  McGrain argues that this had no evidentiary basis.  He further claims that the district court failed to explain why his denial of certain relevant conduct made him dangerous and thus that it did not "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."  *Gall v. United States*, 552 U.S. 38, 50 (2007).

First, the district court's factual determination that McGrain was dangerous was supported and explained sufficiently by its assessment—after two guilty-plea proceedings, a two-day evidentiary hearing, and a sentencing hearing—that McGrain had not been honest about or accepted responsibility for his actions.  *See, e.g., United States v. Broxmeyer*, 699 F.3d 265, 295 (2d Cir. 2012) ("[L]ack of remorse for, or even appreciation of, the seriousness of the totality of

18

[a defendant's] conduct [is] a circumstance that further expanded the range of substantively reasonable sentences to allow the district court to afford adequate specific deterrence and protection of the public.").

Second, the district court adequately explained the reasons for its sentence. It carefully reviewed the 18 U.S.C. § 3553(a) sentencing factors and explained how they applied to McGrain. *See United States v. Genao*, 869 F.3d 136, 142 (2d Cir. 2017) ("There is no requirement that a judge imposing a sentence provide lengthy or elaborate explanations of the often multiple aggravating and mitigating factors about the offense and the offender, or the precise weight assigned by the court to the various, sometimes competing policy considerations relevant to sentencing."). The district court addressed McGrain's upbringing and employment history, his struggles with depression, the seriousness of his offense and the rest of the section 3553(a) factors. And it concluded that McGrain's refusal to be honest about what he had done indicated that he remained "dangerous."

The district court did not err in finding that McGrain was dangerous or in increasing his sentence accordingly. We thus affirm the district court's judgment in its entirety and need not address McGrain's request to be resentenced by a different judge.

## III.  CONCLUSION

McGrain lived with, and sexually abused, MV for nearly a year and a half before he was caught. He took advantage of his position of trust to commit his crime. When discovered, he destroyed evidence and attempted to manipulate MV in an effort to avoid prosecution for his actions. At no point did he accept responsibility or even fully

19

admit what he had done.  We find no error in the district court's imposition of a 264-month sentence.

The judgment of the district court is affirmed.